NASHUA IRON & STEEL CO. v. BRUSH.

(Circuit Court of Appeals, First Circuit. December 22, 1898.)

No. 223.

1. SALES—IMPLIED WARRANTY—EXECUTORY CONTRACTS.

An executory contract to make and deliver an article implies an agreement that it shall be fitly made for the use contemplated by both parties.

2. SAME—ACTION FOR DAMAGES—JUDGMENT AS EVIDENCE.

Where plaintiff, contracting to furnish certain machinery, supplied as a part of it an article manufactured for him by defendant, on account of the defective construction of which plaintiff was subjected to a judgment for damages resulting from the breaking of the machinery, for which he was allowed to recover over against the defendant, held, while doubting the rule of damages applied, that, accepting that rule, the judgment against him, if rendered under circumstances indicating good faith and a reasonable amount of resistance on his part, is admissible as at least prima facie evidence of the amount of such damages.

3. APPEAL—REVIEW—NECESSITY OF SPECIFIC OBJECTIONS AND EXCEPTIONS.

The rule repeated that, to entitle a party to the review of a question in the circuit court of appeals, the objections and exceptions must ordinarily be so shaped as to show that the specific question raised on appeal was presented to the trial court.

4. SALES—IMPLIED WARRANTY—MEASURE OF DAMAGES FOR BREACH.

In an action on an implied warranty of the fitness for the use contemplated of an article manufactured by defendant for plaintiff, enhanced damages beyond the difference in value between the article as furnished and as it should have been, are not in any way recoverable if such damages were caused, or contributed to, by the insufficiency of the article in the form or size which were designated by plaintiff.

In Error to the Circuit Court of the United States for the District of New Hampshire.

Isaac W. Smith (Charles W. Hoitt and Henry E. Burnham, on the brief), for plaintiff in error.

John S. H. Frink (Charles H. Burns, on the brief), for defendant in error.

Before PUTNAM, Circuit Judge, and BROWN and LOWELL, District Judges.

PUTNAM, Circuit Judge. The defendant below agreed with the plaintiff below to manufacture and deliver a forged-iron beam strap of the best hammered scrap iron, of the dimensions particularly described, to be used for a beam engine. The contract was executory, and the case, therefore, has no relation to the doctrine of caveat emptor. So far as the words "the best hammered scrap iron" are concerned, the precise meaning of which we have no occasion to define, the contract was express to use that quality; and any failure so to do, whether relating to patent or latent matters, would constitute a breach. The effect of the provision as to the dimensions of the beam strap is laid aside for this part of the case. As for the rest of it, it is an old rule that such an executory contract implies an agreement that the goods to be delivered will be fitly made for the use contemplated by both parties. Benj. Sales (6th Ed.) § 645. In 1887, in Drummond v. Van Ingen, 12 App. Cas. 284, 290, Lord Herschell stated that this view of the law had

been constantly acted on from the time of Jones v. Bright, 5 Bing. 533, which was in 1829. There may be a question what was the rule of Jones v. Bright, but that is of no consequence for our present purposes. This distinction between mere sales and executory contracts is fully recognized by the local law. Deming v. Foster, 42 N. H. 165, 173, 174.

Whether or not the words "implied warranty" are theoretically correct need not be considered here. However this may be, it is certain, as we have seen, that there arose an obligation that the beam strap should be fitly made; and, as no qualification was reserved by the manufacturer, he can make no claim to be relieved, except to the extent of that extremely narrow class of relief which applies to unconditional agreements. Therefore a failure to deliver a fitly made strap would be a failure in the performance of the contract, whether the defect was latent or patent, and independently of the question whether the defendant below used reasonable care in its work. The declaration stated the case in this particular multifariously, but, as one branch of the allegation clearly covered the rule we have stated, and the demurrer was general, it was properly overruled. Looking, then, at the nature of the obligation imposed by this contract, it follows that none of the rulings below on this precise topic, objected to by the defendant below, including those disposing of the demurrer, prejudiced it. Later there grew up another class of so-called implied warranties; the first glimmering of which was in 1825, in Gray v. Cox, 4 Barn. & C. 108, 115. In that case, Chief Justice Abbott said:

"At the trial it occurred to me that, if a person sold a commodity for a particular purpose, he must be understood to warrant it reasonably fair and proper for such purpose. I am still strongly inclined to adhere to that opinion, but some of my learned brothers think differently."

This was clearly intended by that learned jurist as a qualification of the doctrine of caveat emptor, and to have application to a mere sale. This afterwards grew into a settled rule of law in England, and is now recognized by the Sales of Goods Act of 1893, in section 14, as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, so as to show that the buyer relies on the seller's skill or judgment, and the goods are of a description which it is in the course of the seller's business to supply, whether he be the manufacturer or not, there is an implied condition that the goods shall be reasonably fit for such purpose."

Newbolt's Sales of Goods Act, at page 41 et seq., groups various authorities showing that this legislation is a mere enactment of the rule as lately understood by the courts in England. The expressions in Bridge Co. v. Hamilton, 110 U. S. 108, 3 Sup. Ct. 537, and elsewhere, on which the plaintiff in error relies, relate to cases to which this modern English rule applies, having reference to sales of goods, and not to executory contracts for manufacturing and supplying. The rule with reference to the latter class has been so long established, both in the United States and England, that it would be impossible to break it down, or to essentially qualify it, by any incidental expressions to the contrary.

The important questions in this case are those of the rules of damages. The plaintiff below furnished the beam strap to a steamer in

Canada. The beam broke down, and caused some injury to the boat, and a loss of its use; and a suit was brought in the province of Quebec by its owner against the plaintiff below, and damages for the injury and loss were recovered against him on account of an alleged defect in the beam strap, it being now declared that it was the same defect in issue at bar. It cannot be successfully denied that the same defect was in question in each case. Under the rulings of the circuit court, the foreign judgment was put in evidence, and the jury found a verdict against the defendant below for the amount of the damages recovered of the plaintiff below, as well as for his counsel fees and the costs of suit. With reference to so-called consequential damages, or remote damages, it may be that different rules apply where a manufacturer has been guilty of negligence in producing the article sold, or of knowingly delivering a defective article, and to cases of express or implied warranty; and it may be that there are also differences between cases of express warranty, where the contractor consciously risks results, and cases of so-called implied warranty. McAfee v. Crofford, 13 How. 447, 457; Watson v. Sutherland, 5 Wall. 74, 79; North v. Peters, 138 U. S. 271, 281, 11 Sup. Ct. 346; and Vance v. W. A. Vandercook Co., 170 U. S. 468, 480, 18 Sup. Ct. 645. There are some matters in the charge of the court below which represent the issue as one of negligent manufacture. But at other points the question submitted was purely one of so-called implied warranty, and the rules of damages are to be tested accordingly.

The rules of damages at the common law were long accepted as stated in Greenleaf on Evidence (volume 2, §§ 254, 256), to the effect that those which necessarily result from the breach are termed general damages, and that, even with reference to special damages, the damages must be the natural and proximate consequence of the act complained of. Modern rules in England, and also largely in the United States, follow Hadley v. Baxendale, 9 Exch. 341. Nothing was, in fact, decided in that case; but its dicta have, to a large extent, become accepted rules of law. The rules applied in the court below, permitting a verdict for damages of the nature there recovered, have also been built up in England on the dicta in that case, although they go beyond them. They are commonly practiced there, though not yet formally approved by the house of lords. In the United States they have been largely recognized by the state courts, but they have not yet been accepted by the supreme court. On the other hand, that court has been exceedingly conservative in this matter, and has never gone further than to lay down the rule given in Manufacturing Co. v. Phelps, 130 U. S. 520, 527, 9 Sup. Ct. 601, 603, as follows:

"The rule of damages adopted by the court below, of deducting from the contract price the reasonable cost of altering the construction and setting of the machinery, so as to make it conform to the contract, is the only one that would do full and exact justice to both parties, and is in accordance with the decisions on similar contracts."

A careful examination fails to discover any instance in which any circuit court of appeals has either accepted or expressly rejected the rules as to damages applied in this case. The English practice is, perhaps, best illustrated by Hammond v. Bussey, 20 Q. B. Div. 79; Mowbray v.

Merryweather [1895] 1 Q. B. 857, s. c. on appeal [1895] 2 Q. B. 640; and Grébert-Borgnis v. Nugent, 15 Q. B. Div. 85. The result is practically according to the civil law, as explained by Mr. Justice White in Meyer v. Richards, 163 U. S. 385, 16 Sup. Ct. 1148, and as applied in Bulkley v. Honold, 19 How. 390. In discussing these modern rules as to the amount which may be recovered, Benj. Sales (6th Am. Ed.) § 872, says that an obligation to indemnify for all the damages which would ordinarily follow from a breach "would require proof of an assent" to assume such a responsibility in many cases which might be suggested, in which the application of the rule would otherwise be productive of "startling injustice." But it may well be questioned whether it can ever be justly said that there is an implied assent to assume consequences, running to unlimited amounts, because an assent involving such consequences cannot ordinarily be presumed from mere circumstances; and it may also be questioned whether the rules of the common law relating to damages, which are always conservative, ever contemplated that a manufacturer or trader, dealing honestly, according to his best light, in some matter of the value of only a few dollars or cents, should be liable for disproportionate results unless he guarded himself by express language at the time the sale was made. As the case turns, it does not become necessary for us to determine, on the one hand, whether the rules applied at the trial have become the settled law of New Hampshire, or, on the other, whether we shall approve them for the first time in the federal appellate courts; and having thus guarded ourselves against any implication with reference to them, we come to determine the effect of the position of the parties in the court below so far as it limits the questions over which we have jurisdiction. Under the circumstances of the case, the matter divides into three elements, namely: First. The question of the proper rule of damages as between the plaintiff below and the owner of the steamboat; or, to put it differently, what would have been the proper rule of damages if the defendant below had supplied the beam strap directly to the owner of the steamboat, instead of through the plaintiff below? Second. Whether the fact that the defendant below did not supply the beam strap directly to the owner of the steamboat, but to the plaintiff below, who made his own contract with the owner, so far severed the liability of the plaintiff below to the owner from the obligation of the defendant below to the plaintiff below that, for this suit, the damages for which the plaintiff below was justly liable to the owner of the steamboat must be regarded as remote. Third. Assuming that the law on the first and second questions is settled, or conceded, to be favorable to the plaintiff below, whether or not the provincial judgment can be made available for the plaintiff below in fixing the amount of damages which he is entitled to recover; and, if yes, under what limitations and to what extent? A subordinate question might also arise; that is: If the rule of damages as administered in Canada is more severe than that which would have been administered in New Hampshire if the plaintiff below had been sued in that state, could, in that event, the defendant below have been compelled to respond to the plaintiff below in accordance with the foreign rule? Our understanding of the position of the plaintiff in error is that it makes an

issue only on the third question.    It objected to the introduction of the judgment as evidence on two grounds,—that no notice was given of the pendency of the suit, and that the judgment was not evidence against it "for any purpose whatever."    The latter objection is so broad that it is quite impossible, on this record, for this court to put itself in the position of the court below with reference thereto.    The propositions submitted to us in argument by the plaintiff in error were that this judgment was not admissible, because there was no notice of the suit, because the issues or causes of action were not shown to be the same, because this is not a case for vouching in a stranger, and because the defendant below could not be compelled to go into a foreign jurisdiction to defend the suit.

We are unable to see anything which would justify us in holding that the fundamental questions of the rules of damages which have been explained by us were in any way raised in the court below.    In order that the propositions involved may be understood, it is necessary to bear clearly in view the essential distinction between rules of damages and the question whether or not a judgment, recovered as this one was, can be used to establish the amount of damages under any rule.    It is only the latter which is properly submitted to us.

We pass by the proposition of the plaintiff in error that the issues or causes of action are not shown to be the same, because that was a matter for the jury under proper instructions, and it was correctly submitted to it.    We have already said that no reasonable question could be raised about this.    We also pass by the proposition that this is not a case for vouching in a stranger, as that is included in the larger question whether or not, in this class of cases, a judgment obtained under these circumstances may be admitted for the purpose of showing either presumptively or conclusively the actual amount of damage sustained by the subcontractor.    The plaintiff in error urges, as we have said, that it could not have been compelled to go into a foreign country to take upon itself the defense of the suit there.    We do not think that any general proposition of this character comes before us, because the charge shows the court understood that the defendant below knowingly subjected itself to the consequences of a subcontract in Canada.    If the court misunderstood this matter, the defendant below should have set it right by something more specific than anything found in the record.    We also lay aside any question whether, under the conditions of the case, the plaintiff in error could be subjected to respond in any form for the damages inflicted by the laws of the province of Quebec upon the defendant in error if they had been more severe than the rule in New Hampshire, as it has not been submitted to us.    Either because it was assumed at the trial that the rules of damages are the same by the laws of New Hampshire and the province of Quebec, and the modern practices in England, or for some other reason, none of the four questions stated by us has been properly raised except the third, namely, the admissibility and the effect of the judgment against the defendant in error as evidence in the suit below of the amount of damages in fact sustained.    To put the question in another form, it is—whether it was necessary for the court below, disregarding this judgment, to ascertain from

original sources, and by evidence of a primary character, the actual injury the steamboat in question suffered by reason of the alleged defect in the work of the defendant below.   On this point we must assume that the plaintiff below did not bring himself within the safer rules with regard to a notice to be given of a pending suit, when it is attempted to charge the results thereof on a person not party thereto.   Under the expressions in Lebanon v. Mead, 64 N. H. 8, 9, 4 Atl. 392, and under the plain, practical rules applicable to matters of this character, it cannot be denied that the defendant below was sufficiently informed of the pendency of the foreign suit.   The difficulty arises from the fact that it was not offered the defense of it; but, on the other hand, the plaintiff below, in all his communications to the defendant below, clearly excluded it from the assumption thereof, stating in his letter of December 9, 1890, in which he advised the defendant below that suit had been brought, that he (Brush) "will, of course, defend himself in the action," adding that "it might, perhaps, be as well for your company [that is, for the defendant below] to take some interest in the matter," for reasons stated in that letter. This was so far from inviting the defendant below to take a part in the defense of the suit, or to take either partial or entire charge thereof, that, fairly interpreted, it excluded it therefrom.   At any rate, it is clear that the defendant below might well have construed it as such, and it was anything except a clear invitation to become a party to the litigation.

With reference to the question thus submitted to us in its various phases, there is such a mass of authorities, arrayed to a very considerable extent against each other, that nothing would be gained by our attempting to examine them in detail.   Most of them will be found referred to at various points in 1 Suth. Dam. (2d Ed., 1893).   The text writers and courts are far from always making proper distinctions with reference to the various subdivisions of the principal question. They present one class of issues when a judgment is offered with reference to the damages recovered, and a different class when offered with reference to the costs included in the judgment, and the expenses of litigation not so included.   Moreover, there is a limited class of cases where, beyond doubt, a judgment rendered against a person for whom another has agreed to respond is conclusive as against the latter unless impeached for fraud, and this even though such third person has had no opportunity to assume the defense, or has not even been notified of the existence of the litigation.   There is another class where a judgment is, at least, prima facie evidence against a stranger to the record who has voluntarily agreed to indemnify, within which class falls French v. Parish, 14 N. H. 496.   There is still another, admitted by the plaintiff in error, in which a stranger to a suit is liable over by operation of law, as in Littleton v. Richardson, 34 N. H. 187, and in Lebanon v. Mead, 64 N. H. 8, 4 Atl. 392, where, beyond doubt, the judgment is evidence against the person so liable, either prima facie or conclusive.   But the case at bar falls outside of all these classes, except so far as it is controlled by the principles which underlie them. Notwithstanding this, the weight of authority and the rules of convenience, together with the fact that injustice can hardly arise there-

from, lead to the conclusion that where a subvendee or a subcontractor has a legal claim for indemnification, and has, under fear of the consequences, made an adjustment, or been compelled to yield to a judgment, under circumstances indicating good faith and a reasonable amount of resistance, the amount thus determined, either by the adjustment or by the litigation, becomes evidence of the amount of damages to be awarded against the principal contractor. Smith v. Compton, 3 Barn. & Adol. 407; Suth. Dam. (2d Ed., 1893) § 82 et seq. This conclusion is aside from the question whether the judgment should stand as of conclusive effect or only prima facie, as to the measure of damages. It is not apparent on the record that this precise question was raised. The exception taken to the charge with reference to this topic embraces long extracts therefrom, containing several subject-matters, and for this reason, and in view, also, of the fact that nothing tends to impeach the judgment as to the amount of damages awarded, we are compelled to look only to the broad objection to its admission which we have stated. The judgment was evidence, at least prima facie, and therefore so broad an objection cannot be sustained.

The same considerations, and, it may be, others, apply to the exceptions to the evidence that the plaintiff below paid the judgment rendered against him, and to permitting the reading of those portions of the declaration which recite the judgment; as, in each instance, the form of the objection was practically the same as those which we have considered.

This leaves, however, the question raised by the exceptions taken to the rulings by virtue of which the jury added to the judgment for damages the costs and expenses of the litigation in Canada. In view of the fact that the defendant below was given no opportunity to assume the defense of the suit against the plaintiff below, it seems to be the law of New Hampshire, which, in this respect, is in harmony with the more conservative and safer rule that the defendant below should not be held for any of the costs and expenses referred to. Notwithstanding the general expressions found in Towle v. Lane, 61 N. H. 586, 589, that no formal action is required if only the party intended to be charged understands that he may intervene in the suit (Burrill v. West, 2 N. H. 190, 192), and the express ruling in Chase v. Bennett, 59 N. H. 394, 395, seem to determine it to be the local law that in a case like this at bar, in which the defendant below was excluded from taking a part in the defense, he should not be holden for the costs and expenses thereof. Nevertheless, we are unable to perceive from the record in this case that any objection was made going so far as that. The only exception relating to this topic covers a large portion of the charge of the court below, which contains several distinct propositions, without specifically challenging any particular one. So much injustice has been done by inconsiderately setting aside verdicts through the fact that appellate courts often fail to put themselves in the position of the courts below that we have several times called attention to the necessity of shaping objections and exceptions in such way as to show that, in the court below, the finger was plainly put on the precise spot in question. This rule is so well settled that it is not neces-

sary to refer to authorities supporting it, but Railroad Co. v. Mackey, 157 U. S. 72, 80, 83, 15 Sup. Ct. 491, well illustrates its application to this case. Therefore, for the reasons stated, we are compelled to postpone the consideration of this question until the case comes before us anew, if it ever does.

The plaintiff in error also objects to the admission of certain letters written by the defendant in error to the plaintiff in error, all of which we can group together. Some were written before the suit against the defendant in error was commenced in Canada, and some after. For the most part, each purports to inform the plaintiff in error, from time to time, of the facts with reference to the accident to the steamboat which were reported to the defendant in error. We are unable to see on the face of the letters that they could have been taken from the jury below as not written in good faith for that purpose. In view of the fact that it is apparent that the defendant below had not, at this stage of the trial, if at any, admitted the right of the plaintiff below to recover his legal expenses, nor the reasonableness of their amount, nor the reasonableness of the conduct of the plaintiff below in incurring them, and, since, also, as we have seen, it does not, on this record, present a clear case in reference to these expenses, we are unable to say that the court was not justified in admitting some portions of each of these letters as part of the plaintiff's opening case. It seems to have been his reasonable duty, before involving himself in a litigation the expense of which he intended to charge ultimately on the defendant below, to inform the latter from time to time of the facts reported to him, giving opportunities of explanation in reference thereto. It may be that, if the defendant below had admitted that it made no issues of the character referred to, the letters should have been excluded. It may be, also, that if the defendant below had asked the court to exclude certain expressions contained in them, those parts should not have been read to the jury. The conservative course which might have been pursued under these circumstances is well illustrated by Israel v. Baker, 170 Mass. 12, 48 N. E. 621. But the defendant below asked nothing of this nature. The objections were to each letter as a whole, and they cannot be sustained.

There were various rulings of a subordinate character, with reference to the alleged existence of a custom among manufacturers giving them a right to replace forgings, and to evidence that other beam straps made by the defendant below were not defective, with regard to which the court was so clearly right that we need not protract this opinion by noticing them in detail.

One serious question remains. It appears that the shape and dimensions of the beam strap were prescribed by the plaintiff below, so that any insufficiency or weakness which arose therefrom ought not to have been allowed to fall on the defendant below. An expert called by the defendant below testified substantially that, for the work which this engine was set to do, the size of the beam strap was insufficient. He also testified to a matter of common knowledge that for all parts of machinery of this character a certain margin is customarily allowed for safety, which, in the case at bar, he put at a figure beyond what he computed to have been provided by the dimensions specified. It is

said by the defendant in error that the theory of this witness related only to what possibly might have happened under some supposititious circumstances, against the visible facts of the case. This, however, was for the jury, and not for the court. The recognized principle is certainly applicable that damages beyond the ordinary allowance of the difference in value between the article as delivered and as it should have been, cannot be recovered so far as they ought to have been prevented by the reasonable diligence of the party damaged. Suth. Dam. (2d Ed., 1893) § 155 et seq., explains this proposition, although it is of so fundamental a character that authorities in reference to it need not be cited. Therefore, considering the ordinary practice of machinists, which the defendant below maintains was proved for this case by the expert referred to, it would seem to be, and undoubtedly is, the rule that enhanced damages of the kind in question ought not, in any view of the law of damages, to be recovered for the breach of a so-called implied warranty alleged in this case, if the injury would, in reasonable course, have been prevented by a specification of dimensions providing for the customary margin of safety. Under these circumstances, the defendant, at the trial, submitted the following request:

"If the jury find that the beam strap was constructed of the form and size required by the drawing furnished by the plaintiff, and that the form was unsuitable, and the size insufficient, and that the accident was caused thereby, the defendant is not liable."

We do not find that this request was given, or anything which was the equivalent thereof. It was claimed by the defendant at the trial that the beam strap was unduly strained in being set upon the spider, and also by reason of the foaming and priming of the boilers; and a request for a ruling was made in reference thereto. The court substantially instructed the jury that, if such strains and such priming and foaming of the boilers were incidents against which a contractor should reasonably have guarded, they offered no defense. This is undoubtedly true as a major proposition, but, in order to fit it to the facts as claimed by the defendant below, the requested instruction which we have quoted should have been given, not only because it is correct generally, but especially because, with reference to this class of cases, while, on the one hand, a contractor takes the risk of ordinary incidents of the kind stated, on the other hand he is entitled, so far as the question of enhanced damages is concerned, to demand that the person ordering the machinery, and for whom it is constructed, shall likewise make the ordinary provisions to guard against the results of such incidents, including a proper allowance for margin of safety. If the requested instruction had been given, we think, also, it would have been more clear to the jury that the question was whether or not the work done by the defendant below was fitly done, instead of whether or not the beam strap was reasonably fit for the uses to which it was in fact applied. The latter involved the matter of "size, shape, and dimensions," for which the defendant below was not responsible. Under the circumstances, we think that this omission operated substantially to the prejudice of the defendant below, and for this reason we think the judgment must be reversed. The judgment of the circuit

court is reversed, the verdict set aside, and the case remitted to that court for further proceedings in accordance with law; the plaintiff in error to recover of the defendant in error its costs in this court.