## THE ELIZA LINES.

### (Circuit Court, D. Massachusetts. April 20, 1900.)

### No. 368.

1. SHIPPING—GENERAL AVERAGE—RULES FOR ADJUSTMENT.

   Although a court directs that contributions to general average be made on the basis of the completion of a voyage, interrupted without right by the charterers, it may also properly direct the adjustment to be made in accordance with the customs of the port where the voyage actually terminated, and where the adjustment is in fact made; the question of what custom shall be adopted being one of convenience, rather than of theory.

2. SAME.

   An item of general average charges, based on the estimated cost of reloading cargo discharged on account of injury to the vessel, is not properly allowable where, by reason of the fact that the voyage was not resumed, the expenditure was not actually made. Aliter, under the circumstances, as to estimated commissions.

3. SAME—ASCERTAINMENT OF CONTRIBUTORY VALUES.

   Although, under the circumstances of a case, salvage is a matter of particular averages against the vessel, cargo, and freight severally, yet where such averages arose out of a peril which renders a general average necessary they are to be deducted in ascertaining contributory values for the purpose of the general average.

4. SAME.

   In computing contributory values for the purpose of a general average adjustment it is not necessary that they should all be taken at the same time and place, but, according to the custom of Boston, the value of the vessel is obtained by taking her value at the port of refuge, and adding to it the benefit she received from the general average, while the value of the cargo is taken according to the place and time of its arrival at the port of destination.

5. SAME—FREIGHT.

   In a general average adjustment no deduction is to be made from freight charged against the cargo owner because the cargo has been subjected to particular average charges for salvage.

6. SAME — INTERRUPTION OF VOYAGE BY CARGO OWNER — DAMAGES RECOVERABLE.

   Where the cargo owner takes the cargo from a vessel before the completion of her voyage, under circumstances which do not entitle her to exemplary damages, she can recover only such damages as will compensate her for the net injury suffered, and from the estimated net freight she would have earned is to be deducted the net amount she earned, or should reasonably have earned, during the time it would have taken her to complete the voyage.

In Admiralty. This was a consolidated suit arising out of the abandonment at sea, after a storm, of the Norwegian bark Eliza Lines, and the subsequent bringing of such vessel, with her cargo, into the port of Boston, as a derelict, by the original libelants.

Edward S. Dodge, for Black and others and Bank De Genes.

John Lowell and James A. Lowell, for Andreasen.

Lewis S. Dabney and Frederic Cunningham, for Ward & Co. and Darrach.

PUTNAM, Circuit Judge. The question before the court is that of confirming the report of the commissioner appointed in accord-

ance with the opinion passed down on April 3, 1894. (C. C.) 61 Fed. 308. The commissioner has, in the main, pursued the course marked out in that opinion, and his report is of the utmost value to the court in disposing of the case. No exceptions have been filed except by James E. Ward & Co. Near the close of our prior opinion, we directed that all things decreed by the district court should be followed except as otherwise provided for or modified by us. This had relation to what was in fact decreed, and it had none to the report of the assessor in that court, estimating that the amount to be contributed for general average was $4,818.01. This estimate was not confirmed by the district court, nor made the basis of any decree. The details of the assessor's estimate were stated and accepted by the commissioner, and they include, "Commission on advancing and paying out general average, five per centum, $224.67." This is now excepted to on the ground that this amount was never in fact paid by the owners of the vessel. The commissioner also included in his estimate of the amount of general average charges an item of $319, supposed cost of reloading the cargo at Boston. These two items stand in the same general category, and will be referred to again.

The cargo was sold at Boston, the record shows, for the gross amount of $1,825. From this were paid the charges of sale, amounting to $116.61, which, of course, are no part of the general average, leaving $1,708.39, which was paid into the registry of the court as net proceeds. The cost of discharging the cargo, pumping the vessel, wharfage, and storage, allowed by the district court, was $1,051.09. Of this the district court apportioned to the cargo $797.65, and to the vessel $253.44. The $797.65 was paid out of the registry, leaving net $910.74 therein, as proceeds of the cargo. That court allowed the vessel pro rata freight to the amount of $1,450, and directed that the $910.74, net proceeds of the cargo in the registry, should be applied towards the payment of freight. Thus it was, as said in our prior opinion, that the proceeds of the cargo were applied to the payment of freight and general average, because the charges for discharging cargo, pumping, storage, and wharfage were of the latter class. The proceeds of the cargo thus applied to the payment of freight became, therefore, the property of the owners of the vessel, and were consequently again applied by the district court towards the payment of salvage on the vessel and of freight. Following strictly the terms of our previous opinion, we should confirm this application made by the district court, and regard so much of the proceeds of the cargo as amounted to $797.65 as applied towards general average charges, and $910.74 towards the payment of freight. We will refer to this again.

The district court decreed that the salvors recover against the vessel and her cargo $750 for salvage, and also their costs of suit, taxed at $313.61. It apportioned these sums between $2,250, the valuation of the vessel, and the $910.74 which the court applied towards payment of freight. If its decree in this particular should be lit-

erally construed, the salvors would have been allowed nothing on account of the cargo. Therefore, in our earlier opinion, we held this to be substantially an allowance for the salvage of the vessel and cargo only, and we directed an additional allowance for salvage services and expenses touching the freight, payable only from sums to be realized from James E. Ward & Co.

The main issue raised by the exceptions to the commissioner's report grows out of this expression in our former opinion with reference to adjusting general average:

"The value of the vessel on arrival at Boston will be taken at $2,250. In other respects, general average will be adjusted on the same principles as though the voyage had been subsequently completed, and according to the customs prevailing at the port of Boston."

This was stated very briefly, and the court now perceives that it would have been better to have stated it more fully. However, a careful consideration of the principles expressed in the opinion, on which it proceeded, leaves no doubt as to its proper interpretation. We held that, in the eyes of the law, the charterers, James E. Ward & Co., without right, broke up the voyage at Boston, when they should have permitted the vessel to reload the cargo, and deliver it at Montevideo or Buenos Ayres, according to the terms of the charter party. It followed, as all must see, that the charterers were liable to make good in all respects as though the voyage had been completed. This, of course, cannot be done in form or in specie, but it can be accomplished in substance. Therefore, the charterers were decreed to pay net freight, estimated on the principles pointed out in the opinion, and also they were, of course, liable to contribute towards the general average on the same principles on which they would have contributed if the voyage had been completed, and the general average computed at the end of the voyage, as it would have been in due course. Very likely, a literal following out of the consequences of this proposition would have required us to direct that the general average should be adjusted according to the customs prevailing at the river Plate; but the voyage was in fact broken up at Boston, and the adjustment was necessarily to be made there. The place of adjustment of general average is a question of convenience, rather than of theory. The rules are largely artificial; and, as it is impracticable, from the nature of the thing, to do exact justice, the whole matter of general average is judicium rusticum. There is nothing in the record, and nothing was brought to our attention, to show that the practical results of an adjustment according to the customs at the river Plate would substantially differ from those of one made according to the customs at Boston, notwithstanding we are quite of the impression that, in at least two particulars, an adjustment according to the customs prevailing at Boston would be more favorable to James E. Ward & Co., as will appear from what we will say further on. The justice of our propositions would be illustrated by taking the diversities in practice as

shown in a general way by Gow, Ins. (1895) at pages 304 and 305, and undertaking to construct an adjustment throughout according to any particular custom there explained. How far, as applied to this case, modifications in certain directions required by any customs there explained, other than those of Boston, would be offset by other modifications, neither party has presented anything which will enable us to determine, or to cause us to hold that the net result would be materially modified. On the whole, we could see no reason why we should complicate the computations in this case by referring the parties to the customs of Buenos Ayres or Montevideo, when the customs of Boston were under our hands. The commissioner has followed our directions in this respect.

The commissioner makes the general average charges $6,434.10. The only items questioned are those of $224.67 and $319, already referred to. Although these are items which ordinarily enter into adjustments of general average, yet there is no equity in compelling contribution for what was in truth saved to the vessel by the fact that James E. Ward & Co. took possession of their cargo at Boston. Of course, the item of $224.67, which appeared in the assessor's report to the district court as a "commission for advancing and paying on general average five per centum," was not in fact paid in that particular form, because there was no general average adjustment. Nevertheless, the vessel was compelled to make the repairs which entered into the hypothetical adjustment. The commission was computed by the assessor in the district court on only the general average items which went into the cost of repairs, after the deduction of one-third for new. It covered no part of the items added to general average by the commissioner, which include $1,051.09, the cost of discharging, pumping, wharfage, and storage. As the vessel was foreign, and as she in fact made the repairs estimated by the assessor, it is to be assumed from common knowledge that she, in some form, paid the commission allowed. On the other hand, the item of $319 was clearly not paid, and, on a correct adjustment, should be deducted.

We come to the contributory values which the commissioner placed on the vessel, freight, and cargo. James E. Ward & Co. object that he has taken the value of the whole cargo, yet that he should have deducted 45 per cent. thereof, which they say was appropriated in Boston to the use of the salvors. Under some circumstances, salvage becomes a matter of general average; but under the circumstances of this case, it constitutes particular averages against the vessel, cargo, and freight severally. Dix. Ins. (2d Ed.) 102; Lown. Gen. Av. (4th Ed.) 149; Gow, Ins. 285. As, however, these particular averages arose out of the peril which rendered necessary the general average, they are to be deducted in ascertaining contributory values. It is only necessary for this to refer to Phil. Ins. (5th Ed.) § 1402. The reductions, however, would not be theoretically 45 per cent., nor would they be from the cargo alone. The values of freight and vessel would also be reduced.

The salvage awarded against the vessel was $1,249.32, and, as we have explained, against the cargo, $505.68. If account were to be taken of the taxed costs, they would follow the same proportion. Adding to the salvage awarded against the vessel the amount which, according to the final determination of this case, must be awarded against the freight, and deducting these several sums from the contributory values given by the commissioner to freight, vessel, and cargo, as must be done if the exceptions of James E. Ward & Co. in this particular are regarded, the result would be to their detriment, and would more than offset what they have lost by the addition to the general average charges of the item of $319, to which we have already referred.

James E. Ward & Co. also filed a group of exceptions to the report in various forms, the substance of which is that they object to it on the ground of its refusal to take the sale of the cargo at Boston as fixing its contributory value. In this connection they say the commissioner has taken the valuations of the respective contributories, vessel, freight, and cargo, at different periods of time; and especially they insist that, while the valuation of the cargo is taken as of the time of its arrival at the river Plate, that of the vessel is taken at Boston. In determining the value of the vessel, the commissioner added to her appraisal at Boston, $2,250, as directed by our opinion,—the benefits which she derived from the general average. This is correct on the theory that the adjustment is to be made on the values at the river Plate, but according to the customs at Boston, as we directed it should be made. The repairs of the vessel cost quite an amount in addition to what went into general average, so that her value at the river Plate might be considered to be more than her appraised value at Boston, plus the benefit she received from general average; but her contributory value at the river Plate would be precisely what the commissioner has made it. For him to have increased her value as of the time of her arrival at the river Plate beyond the result of his computation would be a violation of the well-settled rule stated everywhere, but especially in section 1402, Phil. Ins., to which we have already referred.

The insistence of James E. Ward & Co. that all contributory values should be taken as of the same time is clearly wrong. The rules according to the custom at Boston are stated in Dix. Av. (1867) at pages 8 and 172, which shows that the value of the vessel is obtained by taking her value at the port of refuge, and adding to it the benefit which she received from general average, while the value of the cargo is taken according to the place and time of its arrival at the port to which it was destined. This is shown more clearly in Dix. Ins. (1866) at pages 343 and 345.

No complaint is made by James E. Ward & Co. of the contributory value of the freight as fixed by the commissioner. This was clearly in accordance with the custom of the port of Boston, although, if it had been made according to the custom at the river Plate, it might have been less advantageous to them, because the

deduction there from the gross freight would probably have been one-half, instead of one-third, as it is according to the custom which the commissioner followed. Moreover, at the river Plate, the ship would probably have contributed for only one-half of its value and the cargo for the whole, so that in this respect also James E. Ward & Co. might have been gainers, and not losers.

There is one minor item to which the exceptions relate, but, on the whole, we are satisfied that the result of the adjustment of general average made by the commissioner was favorable to James E. Ward & Co. Therefore, as the other parties have not excepted to the report, and as we are satisfied that James E. Ward & Co. cannot complain of the net result of the commissioner's adjustment of general average, we are of the opinion that we are not required to recommit the case to the commissioner, and thus cause further long delay in the litigation, merely because the commissioner has proceeded in the particulars to which we have referred on certain mistaken theories, while a recommitment could not be of any practical advantage to the excepting party.

We have not, in this connection, overlooked the objections taken by James E. Ward & Co. to the value which the commissioner has put on the cargo on the theory that it had arrived at the river Plate. Our first impressions were that the value was excessive, and that sufficient deductions were not made for its damaged condition. We were especially impressed by the fact that, if its actual value if delivered at the river Plate would have been so far in excess of its invoice value as the report makes it, James E. Ward & Co. would not have permitted it to be sold at Boston, but would have sent it forward, either in the Eliza Lines or in some other vessel. Nevertheless, the commissioner investigated the matter with evident care. Quite an amount of testimony was taken by him as to values, and the only proof offered in behalf of James E. Ward & Co. was the evidence of their own agent, who represented them in the proceedings at Boston about the vessel, and who was still interested in their behalf. It is true that this agent is evidently a man of experience in this particular; but on the question of values the commissioner had what he was entitled to accept as positive evidence of sales of similar cargoes at the river Plate at or about the time to which this litigation relates. Of course, he was not required to accept the opinions and estimates of the witness produced in behalf of James E. Ward & Co., in view of the relations which the witness sustained to them, and his testimony did not go beyond opinions and estimates. On the whole, notwithstanding our first impressions, we do not find sufficient to justify us in disturbing the valuation put by the commissioner on the cargo, having in regard the weight which the supreme court has frequently said should be given to conclusions of masters, assessors, and commissioners.

The remaining important question is that of the amount for which a decree should go against James E. Ward & Co. for freight. On this question both parties have cited to us the judgment of Lord

Mansfield in Luke v. Lyde, 2 Burrows, 882. James E. Ward & Co., relying on this, maintain that they should not be charged with freight on the portion of the cargo represented by the award to the salvors, which they also compute for this purpose as 45 per cent. thereof. Undoubtedly, some of Lord Mansfield's expressions sustain this proposition; and like expressions of Mr. Justice Story are found in The Nathaniel Hooper, 3 Sumn. 542, 552, Fed. Cas. No. 10,032. Mr. Justice Story cited, and apparently relied on, Luke v. Lyde, but the facts before him were entirely unlike those at bar, because in the case before him the ship was sold under an admiralty decree, and was not able to go forward with her cargo, and the only question was one of freight pro rata, which is not at all the question here. These references are against the underlying principles of the maritime law with reference to payment of freight. Mr. Justice Story has stated the pith of these in Jordan v. Insurance Co., 1 Story, 342, 353, Fed. Cas. No. 7,524. As is there said by him, nothing is better founded in the law than that ships are bound to receive full freight if the cargo is carried to the port of destination, and specifically remains, notwithstanding at its arrival it is, by reason of sea damage, even worthless. According to the ordinary rules of maritime law, the cargo being delivered, the freight is earned; and no exceptions are made because the cargo is subject to either general average or particular average charges. Luke v. Lyde is cited on various points, but it is not referred to as establishing the proposition now made by James E. Ward & Co., either by Carver, Abbott, Maclachlan, Wheeler, Leggett, or Scrutton. Moreover, neither of these authorities lays down the rule claimed by James E. Ward & Co., although in them we have practically referred to the whole body of the law. In Metcalfe v. Iron-Works Co., 1 Q. B. Div. 613, 620, Luke v. Lyde is cited as illustrating the rule of freight pro rata; and when the same case came before the court of appeal in 2 Q. B. Div. 423, 427, Luke v. Lyde was again referred to by Lord Coleridge, then chief justice, with reference only to the same subject-matter. In Macl. Shipp. (4th Ed.) at page 519, Luke v. Lyde is criticised, although not on the precise point which we are considering. We therefore do not think we are called on to accept this authority as against what seem to us the fundamental principles of the law of carriage by sea; and, so far as this point is concerned, we sustain the report of the commissioner.

On the other hand, Luke v. Lyde is cited by the opposing parties as sustaining the proposition that the court was wrong in not awarding against James E. Ward & Co. the gross freight for the voyage. In some respects, at least, they have misapprehended the rule laid down by us. The proposition is made that the court forbids that the vessel be reimbursed for her expenses in preparing for her voyage, and also her actual expenses from Pensacola to Boston. But our directions were explicit to deduct from the gross freight only such charges as were saved to the vessel. Luke v. Lyde refers to a determination of the house of lords in 1733 in Lutwidge v. Gray.

The best statement of that case within the reach of the court is found in Maclachlan's work, already referred to, at page 502. There is a class of well-recognized cases, like Tindall v. Taylor, 4 El. & Bl. 219, which asserts the often-repeated rule that the cargo owner cannot take his cargo pending the voyage, except on payment of gross freight; but Luke v. Lyde, and other decisions of that character, when they speak of full freight, refer to full freight as distinguished from freight pro rata itineris, and none of them had occasion to discuss the method of determining what is full freight.

Both with reference to this topic, and also with regard to the fact that we directed deduction from the estimated net freight to the river Plate of the net freight to Lisbon, we must follow modern rules, which give only actual damages, except where vindictive damages are allowed, which is not permissive in the case at bar. Following these rules, no damages can be recovered in excess of the net injury suffered, and we must hold that it is the duty of every person damaged to take reasonable measures to diminish the effects thereof. This is now the universal rule, applied in Steel Co. v. Brush, 33 C. C. A. 456, 91 Fed. 213, 221. Therefore, it was the duty of the Eliza Lines, after James E. Ward & Co. took possession of her cargo, not to lie idle, but to secure another freight, if one could be obtained. We have, therefore, no doubt that we were justified, on this question of the amount of net freight to be paid by James E. Ward & Co., to do exact justice between the parties, as was determined by our prior opinion.

The commissioner fell into an error in estimating the date from which the theoretical voyage to the river Plate should be computed. Until November 16, 1889, the cargo was in the hands of the court. Neither James E. Ward & Co. nor the owners of the bark are responsible for the delay which ensued therefrom. It was not until that time that the cargo was discharged, and the vessel commenced her repairs. These were concluded about December 12th, and the time for completing the voyage to the river Plate should be computed from that date. The voyage to Lisbon was undoubtedly completed within the period within which the voyage to the river Plate might have been completed theoretically. Therefore, James E. Ward & Co. should have received the benefit of the whole net Lisbon freight. On the other hand, the commissioner made an error in arriving at the net freights for this purpose by deducting from the gross freights one-third thereof. This was not in accordance with the instructions of the court, which were to compute the estimated charges of completing the voyages from Boston to the river Plate on the one hand, and from Boston to Lisbon on the other, according to the general rules found in Williams & B. Adm. Jur. (2d Ed.) 101, 102. The custom at Boston for arriving at the contributory value of freight cannot be accepted for the determination of net freight for the purposes of this part of the case. That the result was inequitable is at once seen from the fact that the deduction made by the commissioner from gross freight, covering the prob-

lematical expenses of earning it between Boston and the river Plate, was $1,869.75, while the like deduction for the voyage from Boston to Lisbon was only $968. Theoretically, the voyage from Boston to the river Plate would have cost only one month's more wages than that to Lisbon, with a slight addition for insurance and interest, while the voyage to Lisbon was chargeable with many incidents at Boston with which the theoretical voyage to the river Plate would not have been. The proper deduction for each voyage, therefore, must amount to substantially the same sum. Balancing, therefore, the error of the commissioner in giving James E. Ward & Co. the benefit of only a pro rata of the voyage to Lisbon against the errors in deductions from gross freights to obtain net freights, we are impressed with the belief that, all corrections being made, the net result would be substantially unchanged.

On the whole, we conclude to accept the gross amount awarded by the commissioner against James E. Ward & Co. for freight and general average. The final decree, therefore, will cover against James E. Ward & Co. $1,585.29, with interest according to our prior opinion. So far as concerns the interests of the salvors, the decree may run directly in their favor against James E. Ward & Co. for the amount determined by the commissioner, $996.33, with interest according to our prior opinion, the same being a part of the gross sum of $1,585.29.

It is apparent that, in view of what we have said in this opinion, the total amount due from James E. Ward & Co. might, as we have already suggested, be distributed between freight and general average, and the amounts paid or payable as such from the proceeds of the cargo paid into the registry of the court, as we have pointed out, deducted respectively from each; but no interest which we perceive requires this. If, however, parties show cause therefor, it may be done.

The appellants will, on or before May 1st, file a draft decree in accordance with our prior opinion, as supplemented by this opinion, and James E. Ward & Co. may file corrections thereof on or before May 10th.