JAMES THOUBBORON v. FRANK S. LEWIS, MITCHELL SYKES ET AL.

*Contracts—Discretion as to design.*

A contract for a large quantity of fancy signs was made by correspondence, the manufacturer submitting a design which the customer returned after writing thereon the word "Established," and the date "1875." He wrote the word and the date on opposite sides of a shield which was in the middle of the sketch. He afterwards wrote to the manufacturer, referring to the signs of rival dealers, and saying "We want something to beat theirs." The manufacturer placed the word and the date at the head of the signs and the customer refused to take and pay for them. *Held*, a case in which the arrangement of the design had been left to the reasonable discretion of the manufacturer and that he was entitled to recover.

Error to Superior Court of Detroit. Submitted April 27. Decided June 11.

ASSUMPSIT.    Plaintiff brings error.

*James O'Brien* and *Atkinson & Atkinson* for plaintiff in error.

*Henry A. Harmon* and *H. A. Chaney* for defendants in error.    Payment for goods cannot be enforced unless the order therefor was strictly fulfilled, *Clark v. Wright* 5 Phil. 439; *Smith v. Brady* 17 N. Y. 173; *Martus v. Houck* 39 Mich. 431; *Neville v. Frost* 2 E. D. Smith 62; *Gibson v. Cranage* 39 Mich. 49; usage cannot be shown to explain a contract if inconsistent with its terms, *Barnard v. Kellogg* 10 Wal. 383.

GRAVES, J.    The defendants, who are bakers in Detroit, refused to accept and pay for a quantity of fancy signs made for them by the plaintiff, an ornamental sign painter in New York.    The negotiation between the parties was carried on by correspondence.    The defendants, under date of April 12, 1879, wrote for samples of show cards about the size and style of Hathaway & Son's "Gloss Polish" card, with black ground and red letters, leaving out the picture and putting in "plain, bold letters."    The plaintiff replied under date of the 14th, and enclosed a sample of signs just made for a coffee house, and observed that he could design for defendants' trade, and finish up in the style of the coffee-house sign, at certain rates specified.

The defendants, under date of the 17th, sent a rough plan, which they desired the plaintiff to *sketch* for them and return as soon as possible, when, as was added, "we will send you order for same," and the plaintiff thereupon drew a pencil sketch and sent it on the 21st. On receipt of this the defendants wrote on the 28th, "Enclosed we return you sketch for label with the words 'Established 1875' added," and on inspecting the sketch the word "established" appeared in written characters on one side of the shield and the figures "1875" on the other.    The communication proceeded as follows: "We

would like to have our name and crackers a little more prominent; that is, have the letters shaded so they will stand out bold and distinct, viz." [giving a pen and ink illustration of the style of letter meant], "or something of that style. Please advise us when we can expect them. Give us a clean, neat label."

The plaintiff replied May 1st that he would make the alteration required and get the signs out without delay, and suggested that it would take about two weeks. A week later the defendants wrote that they have been told that some show signs faded soon, and they desired him to use a color which would not fade by exposure to the sun; and nearly a week thereafter they wrote again that a person whom they named was then at work on a show card for certain establishments who were competitors of defendants, and they observed: "We want something that will beat theirs." "C [the person getting up the other card] said yours would all fade out in a short time."

The plaintiff five days later forwarded from New York to defendants one thousand and thirteen of the signs, and on their arrival at Detroit the defendants refused to accept them, and among the grounds of their refusal the most material was that the word "Established" and the figures "1875" were placed at the top instead of being put in the positions where they were noted on the sketch by defendants. The plaintiff then brought this action for the price, and the jury, under a charge which in substance required them to find for defendants, unless, in their judgment, the defendants left the placing of the new matter before mentioned to the plaintiff's discretion, returned their verdict in the defendants' favor.

The essential question is whether the learned judge, in leaving this point to the jury, and they in deciding it as they did, committed an error, and, on full consideration, we think they did. That the place assigned to the added word and figures by the plaintiff was in better

taste than the original, and that the card so shaped stood a better chance than it would have done otherwise to "beat" the signs preparing for the other bakers, has not been disputed.  The word "established" containing eleven letters, and the date of the year only four figures, the appearance of the long word on one side of the shield, and the short date on the other, would involve irregularity and breach of harmony, and would cause more or less offense to the eye.

But defendants contend, as they did below, that the agreement was fixed and absolute in requiring the added matter to be set down exactly where they had noted it on the sketch, and that artistic ideas were not admissible to overrule the stipulation; that they were entitled to have their own way, and to stand on strict compliance with the bargain, whether the production would be more or less pleasing to artists and amateurs.

The right of the defendants to insist upon substantial observance of the contract in every particular is, of course, not disputed.  But the question is, by whom and how shall the contract be interpreted?  As it depended on written and not oral materials, and they called for no expository aid beyond a consideration of the interior and surrounding circumstances, it was for the court, and not for the jury, to decide whether the plaintiff was authorized to fix the position of the word and figures in question.

And it only remains to speak of the interpretation called for.  The negotiations being by letter and between business men, and not being conducted in the phraseology of lawyers, or with the care about expression generally observed in formal documents, it is not safe and would not be fair to test it by any technical rules.  It is a case for equitable interpretation, and the proper course is to look at all the circumstances, and then read the arrangement as the defendants were bound to consider it as understood by the plaintiff./ *Mizner v. Kussell* 29 Mich. 229–231; *Potter v. Ontario & Livingston*

*Mutual Ins. Co.* 5 Hill 147; *Barlow v. Scott* 24 N. Y. 40; *Hoffman v. Ætna Ins. Co.* 32 N. Y. 405–413; *Gunnison v. Bancroft* 11 Vt. 493; 2 Kent's Com. 557; *White v. Hoyt* 73 N. Y. 505.

He was a skilled designer and printer of fancy signs, and the defendants sought his service because he was so, and because they were not artists in that line. They believed he had special qualifications, not only for executing, but also for designing, and they felt that to attain their object it would be expedient to confide much to his taste and judgment. Whilst they might indicate the ends they sought, it would be requisite to leave to his decision in a considerable degree the final choice of the proper means. They wanted something superior to their neighbors, and it was expected of him to draw upon his ability to satisfy them. In referring to the lettering they explained that they desired to have the letters shaded so they would stand out bold and distinct; but instead of confining him to any precise method they told him they wished "something" of the style of the pen and ink illustration, and concluded by saying, "give us a clean, neat label."

By this they required his judgment of what would be "clean and neat," and impliedly excluded his employment of anything or any arrangement which in *his* view would be unseemly and out of proportion. Again, they requested that he would use durable colors, and so inferentially referred the selection in that regard to his judgment. And finally, they desired that he would provide a card that would "*beat*" the signs their neighbors were getting up.

Now these various observations and directions, when viewed, as it was natural they should be, in the light of all the facts, were obviously and directly calculated to impress him with the notion that he was allowed discretion wherever he was not positively instructed, and that he was not expected to display the added matter in any predetermined position, or in any way which according

to his judgment would mar the effect and constitute a blemish. The whole grouping had been left substantially to await his suggestions, and the interference of the defendants had been confined to ideas of style.

When they received the sketch they were careful to point out certain changes in the letters to be employed, and to specify certain effects they desired to have produced, but were silent as to the position the new matter should occupy. The only thing which might have indicated that they preferred any special position for it was the fact of its being noted on the sketch as before mentioned. But the other circumstances were too expressive of the purpose that the plaintiff should use his own judgment, to leave any room to claim that he understood or was bound to understand from the fact referred to that the new matter was required to be printed where it was noted.

Considering the situations of the parties relative to each other, and what they were negotiating about, and in what manner, the conclusion is just that it was incumbent on the defendants to make known distinctly to the plaintiff that the word and figures in question must be inserted where they were noted, if it was meant to hold him to a literal adherence in that respect to the sketch. They did not do so, but gave their correspondence such shape as to authorize him to infer that he was to make a change, if neatness, in his judgment, required it.

On the whole, the jury ought to have been instructed that the placing of the word "established" and the accompanying figures "1875," was left to the reasonable discretion of the plaintiff.

The judgment must be reversed with costs and a new trial ordered.

The other Justices concurred.