658    APPELLATE COURT OF INDIANA,

Indiana Fuel Sup. Co. v. Indianapolis Basket Co.—41 Ind. App. 658.

## INDIANA FUEL SUPPLY COMPANY v. INDIANAPOLIS BASKET COMPANY.

[No. 6,287.  Filed May 14, 1908.]

1. CONTRACTS.—*Meeting of Minds.*—A contract, so phrased that either of two meanings might reasonably be ascribed thereto, is not binding, where one party understood it to mean one thing, and the other party understood it to mean another.  p. 660.

2. SAME.—*Sales.*—*Coal.*—*Grades.*—A contract for "egg" coal, understood by the vendor to mean "steam egg", or single-screened coal, and by the purchaser to mean "domestic egg", or double-screened coal, is unenforceable because of want of mutuality of consent.  p. 660.

3. SAME.—*Construction.*—*Question for Court.*—The construction of a contract is a question for the court.  p. 661.

4. APPEAL.—*Harmless Errors.*—*Contracts.*—*Want of Mutuality.*— Where the contract sued upon is unenforceable for want of mutuality, errors in favor of defendant in the admission of evidence and in the instructions, are harmless.  p. 662.

From Marion Circuit Court (14,027) ; *Henry Clay Allen,* Judge.

Action by the Indiana Fuel Supply Company against the Indianapolis Basket Company.  From a judgment for defendant, plaintiff appeals.  *Affirmed.*

*Jameson, Joss & Hay,* for appellant.

*Charles Remster,* for appellee.

RABB, J.—On December 19, 1904, the appellee, through its president, gave the appellant a written order for two cars of Indiana egg coal, to be delivered f. o. b. cars on appellee's switch at Indianapolis after January 1, 1905, at the price of $1.75 per ton, which order was accepted in writing by the appellant.  Neither the order nor its acceptance contained any more definite description of the coal which was the subject of the contract than "Indiana egg."  The evidence shows that what is known to the trade as "egg" coal is coal run over screens with a three-inch mesh, and another screen with a one and one-fourth inch mesh.  The coal passing through the three-inch screen and over the one

NOVEMBER TERM, 1907. 659

Indiana Fuel Sup. Co. *v.* Indianapolis Basket Co.—41 Ind. App. 658.

and one-fourth inch screen is known as "egg" coal. The evidence also shows, without controversy, that there are two grades of "egg" coal, the higher grade being made by running the coal over the screens twice, the lower grade by running the coal over the screens but once, there being more slack in the lower grade than in the higher grade, and the higher grade being more expensive. The lower grade is known to the trade as "steam egg" coal, and the higher grade as "domestic egg" coal. One car-load of the coal furnished by appellant under its contract arrived on appellee's switch sometime in January, in the absence of appellee's president, and was unloaded by appellee's servants at its place of business without inspection. Appellee at once gave the appellant notice that it claimed that the coal did not comply with the contract, and that it would not receive and pay for the same. After some discussion of the matter, the appellee, however, did pay for the car-load of coal received, but claimed that it was not in compliance with the contract, and that it would not receive and pay for the second car-load. It is contended by appellee that it was agreed by appellant that it would divert the second car-load to some other place, and not call upon the appellee to accept or pay for the same. This, however, is disputed by appellant. The second car-load arrived on appellee's switch on January 22, 1905. Appellee refused to receive and unload the same, and the coal was afterwards sold by the railroad company for the payment of freight and demurrage. This action was brought by appellant before a magistrate to recover the contract price of the coal, the appellee contending as a defense, among other things, (1) that, because of a misunderstanding between the buyer and the seller as to the grade of coal the contract called for, the buyer having in mind Indiana domestic egg coal, double screened, and the seller having in mind Indiana steam egg coal, screened but once, that the minds of the contracting parties never met, and that there was therefore no contract between them; and (2) that the

coal which the appellee refused to accept did not comply with the contract.

Mutual assent is necessary to the formation of every contract, and any mistake of the parties, by which one of the contracting parties has in mind one thing as the subject matter of the contract, and the other party has in mind something entirely different, and where the terms of the contract are such that it will mean either the one or the other, there is no meeting of the minds of the contracting parties, and therefore no contract. If, in this case, the terms of the contract entered into by the parties would properly describe domestic egg coal, and could be understood by either of the parties as meaning domestic egg coal, and would also describe steam egg coal, and could be understood by either of the parties as meaning steam egg coal, and one of them had in mind when he contracted for egg coal the higher grade of coal, and the other had in mind when entering into the contract the lower grade of coal, and each party believed that by the terms of the contract he was contracting for the particular kind of coal he had in mind, then no contract was entered into between the parties. 24 Am. and Eng. Ency. Law (2d ed.), 1034, and cases cited.

It is the contention of the appellant that the coal which was the subject-matter of the contract was bought by the appellee for the purpose of making steam, and that it was sold by the appellant for that purpose, and therefore there was no room for any misapprehension as to the grade of coal the contract called for. The contract itself, as before stated, is silent as to the grade of egg coal to be furnished. It is true the evidence does show that the coal was to be used for the purpose of making steam, but it by no means follows that the higher grade of coal might not well be meant and understood by the terms of the contract. The president of appellee company testified, in reference to the circumstances under which the order for the coal was given, as follows: "This young man who sold this coal to

me quoted it at $1.85 f. o. b. our switch, and I told him I could not pay any such money, and I said: 'What rate can you get on that coal?' And he went to the telephone and said: 'I will talk to Mr. Miller in regard to that;' and he asked me what I could pay for that coal, and I said: 'I have been buying Indiana egg, double-screened coal, absolutely clean, for $1.75,' and he called Mr. Miller up regarding the freight only.   *   *   *   And after this man finished his talk with Mr. Miller he turned around to me and said: 'The rate is all right, and I will put it in here for $1.75, if you can use two cars.' " ·This is all the evidence upon the subject of what took place at the time the contract was made that would tend to throw any light upon the subject as to what was meant by the term "Indiana egg" coal. From this conversation had at the time the contract was entered into,·the appellee had the right to believe that the egg coal which the appellant was contracting to furnish him was the kind of ᵥegg coal that he referred to as having been bought for $1.75 per ton, and that was double-screened coal.

The construction of a contract is for the court, and not · for the jury.   Here the contract is in writing, for the delivery of two cars of egg coal at $1.75 per ton f. o. b.

3.   cars on appellee's switch.   There is no dispute that there is a grade of coal known as "double-screened egg coal."   There is no dispute that at the · time the contract was entered into appellee's president, who was making the contract for the appellee, said to the appellant's salesman, who was making the contract for the appellant, with reference to the coal, in response to an inquiry from the salesman as to what he could pay for that coal: "I have been buying Indiana egg double-screened, absolutely clean, for $1.75," and that thereupon, after some conversation over the telephone the appellant's agent said to the president: "We will put it in here for $1.75, if you can use two cars."   This conversation could· leave but one impression upon the mind of the president of the appellee,

and that was that the coal that the appellant was to furnish at $1.75 per ton was the same grade of coal that he had been theretofore paying the same price for—that is double-screened Indiana egg coal—and a contract made under such circumstances by the buyer calling for Indiana egg coal, where the term ''Indiana egg'' coal might mean one of two grades of coal, could be held as a matter of law to mean only the higher grade. And not only had the buyer the right so to understand the contract, but the seller would be bound by such an interpretation of the contract. There being no claim by the appellant that the carload of coal was of this grade, no mistakes made by the court in ruling upon the admission or rejection of evidence, or the instructions given to the jury would constitute reversible error.

The judgment is affirmed.

Roby, C. J., absent.