## WINNEMUCCA WATER AND LIGHT COMPANY *v.* MODEL GAS ENGINE WORKS.

[No. 22,118. Filed May 27, 1913.]

1. SALES.—*Warranty.—Action for Breach.*—Where the complaint in an action for breach of warranty of horse power of an engine sold to plaintiff sets out the written contract of the parties, and makes no claim of an implied warranty, the cause stands upon the construction of the contract. p. 545.

2. SALES.—*Warranty.—Action for Breach.—Implied Warranty.*—Where plaintiff counts upon an express warranty of the horse power of an engine, without any reference to adaptability, an implied warranty of adaptability to use to which it was known the engine was to be put cannot arise. p. 546.

3. SALES.—*Contract.—Construction.*—A contract must be construed in all its parts, and a contract for the sale of machinery, prepared by the manufacturer, if of doubtful meaning or susceptible of two meanings, should be construed most strongly against him and in the sense in which it may be reasonably supposed it was understood by the vendee, when to do otherwise would result in deceit or injustice. p. 546.

4. SALES.—*Implied Warranty.—Express Warranty.*—While there is an implied warranty that an article, sold by the manufacturer for an intended use known to him, is reasonably fit for or adapted to that use, at least as against defects not open and visible, it does not exist with respect to a use not known as intended, or in the case of an express warranty. p. 547.

MAY TERM, 1913.    543

Winnemucca Water, etc., Co. *v.* Model Gas, etc., Works—179 Ind. 542.

5. CONTRACTS.—*Elements.*—*Meeting of Minds.*—Where one party means and intends one thing, and the other party means and intends another, there is no meeting of the minds and therefore no contract.  p. 548.

6. SALES.—*Warranty.*—*Horse Power of Engine.*—The warranty in the contract of sale of an engine, "Horse power developed at 275 R. P. M. 150 actual H. P.," must, under evidence showing the trade custom to reckon the gross horse power in supplying engines of a rated horse power, be taken as a warranty of the gross power, and not the net power when geared to machinery, in the absence of representations by the seller, or notice to him of net power required by the buyer.  p. 548.

7. APPEAL.—*Review.*—*Harmless Error.*—*Ruling on Demurrer.*—No error can be predicated on the ruling on the demurrer to a counterclaim, where no finding or judgment was rendered thereon against appellant.  p. 549.

From Miami Circuit Court; *J. M. Tillett,* Judge.

Action by the Winnemucca Water and Light Company against the Model Gas Engine Works. From a judgment for defendant, the plaintiff appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.) *Affirmed.*

*W. E. Mowbray,* for appellant.
*Antrim & McClintic,* for appellee.

MYERS, J.—Appellant instituted this action against appellee by a complaint in one paragraph, to recover part of the purchase price paid on a contract of sale of an engine by appellee to appellant, and for damages for alleged breach of guaranty contained in the contract, a copy of which is incorporated in the complaint by way of exhibit. A demurrer to the complaint for want of facts sufficient to constitute a cause of action was overruled. Appellee answered in general denial, and a second paragraph by way of counterclaim, asking judgment for the balance of the purchase price of the engine. Appellant's demurrer to the counterclaim for want of facts sufficient to constitute a defense or cause of action was overruled. Appellant's reply to appellee's counterclaim was in general denial, and a second

544    SUPREME COURT OF INDIANA,

Winnemucca Water, etc., Co. *v.* Model Gas, etc., Works—179 Ind. 542.

paragraph setting up appellee's knowledge of the place where, and the purposes for which the engine was purchased, the guaranty contained in the contract, the failure of the engine to do the work, the breach of guaranty, and the total failure of consideration of the purchase price, seeking recovery of the money paid, and special damages alleged. Appellee's demurrer to this reply, for want of facts sufficient to avoid appellee's second paragraph of answer, or to constitute a defense to its counterclaim was overruled. A trial by jury resulted in a verdict for the defendant on the complaint with no finding as to the counterclaim, and over motion for a new trial, judgment was rendered for the defendant with costs.

The error here assigned and not waived is on overruling appellant's motion for a new trial. The contract in controversy arises over a proposition in writing dated September 8, 1906, to furnish "E. Reinhart & Co.", to be shipped to Winnemucca, Nevada, Model Gasoline, Distillate, Alcohol Engine, Style C", and setting out the specifications of the engine, among which are, "Horse Power developed at 275 R.P.M. 150 actual H. P." and the following guaranty: "We guarantee engine to develop its full rated H.P. and to use not to exceed one gallon of fuel per H.P. per ten hours full work, when using either No. 1 or No. 2 Distillate. We to furnish expert to erect.  *  *  *  This engine to be delivered 60 days from date of receipt of order F. O. B. Peru, Ind.  *  *  *  For the sum of Four Thousand and One Hundred Dollars $4100.00 (Freight to be deducted from price.) Cash with order $1200.00. Cash when engine is delivered $1200.00. Cash within 30 days after engine is started by our expert, $1700.00 less freight on engine." This proposal was followed by a written acceptance, September 18, 1906, by "E. Reinhart Inc. by M. Reinhart Secy."

It appears by the evidence that E. Reinhart was secretary and treasurer of appellant corporation, and its agent in receiving and accepting the proposal. The contract price was

increased $190 after the contract was executed, for extras. The evidence is that $2590 not including freight, was paid before the engine was shipped and the freight was $477.60, and appellee furnished the erectors, and that the engine as set up in Winnemucca could not be made to develop and sustain more than from 63 to 70 horse power from one-half to two-thirds of the time, 98 to 99 horse power a portion of the time, and at one time ran to 127 horse power for a few minutes, but the bearings then heated badly, and that it developed 170 horse power at Peru; that when the contract was made it was understood between the parties that the engine was to be used in Winnemucca, Nevada. There is evidence that there is a loss of transmission or efficiency of about 40 per cent of the rated horse power of gasoline engines from the friction of belting, gearings, bearings, inefficiency of the generators, idlers, and altitude, and in this case the loss of power was increased from the weight of an idle generator on the shaft, an attached waterwheel, and a defective clutch. The loss of power at the altitude of Winnemucca is given as about 11 horse power, which however may be overcome by a device applicable to that purpose.

The claim of appellant is, that 150 horse power working efficiency was guaranteed, while the claim of appellee is, that the rated and guaranteed horse power was subject to the deductions of loss of horse power from friction, and that it is so understood in the trade. The tests at Winnemucca were made by and upon Ampmetres, while the evidence fairly shows that the only reliable test is a brake test. No claim is made of an implied warranty, so

1. the cause stands upon the construction of the written contract. *Reeves* v. *Byers* (1900), 155 Ind. 535, 58 N. E. 713; *Conant* v. *National State Bank* (1889), 121 Ind. 323, 326, 22 N. E. 250, and cases cited; *Sullivan Mach. Co.* v. *Breeden* (1907), 40 Ind. App. 631, 637, 82 N. E. 107.

Upon this state of the record the court was requested by

appellant to charge the jury that in case there was any uncertainty as to the place where the engine was to develop the full rated horse power, and the proposal might be given two different constructions, if prepared by the seller, it is to be construed most strongly against him, and is to be given that construction most favorable to the acceptor. An instruction was requested, and refused, on the theory 2. of implied warranty of adaptability to the use to which it was known the engine was to be put, at the place where it was to be used. The latter instruction was clearly erroneous for the reason that as appellant counts upon an express warranty of horse power, without any reference to adaptability, an implied warranty can not arise. The court instructed the jury that the warranty is express, and the right of recovery limited to the alleged breach as to the capacity of the engine; that it was the duty of the court to construe the contract, and that there being an express warranty, no implied warranty arises, and that under this contract if the engine had the capacity to develop 150 horse power, at 275 revolutions per minute, without connection with shafts, belting or other machinery, its full warranted capacity had been fulfilled, and that there is no implication of warranty that it would furnish power to operate appellant's plant.

Exceptions to the refusal to give, and to the giving of these instructions present the questions relied on. It is not to be doubted that a contract must be construed in 3. all its parts, and that in case of a contract prepared by a manufacturer of machinery, so worded as to convey a doubtful meaning, or to be capable of two meanings, that construction should be adopted which will operate most strongly against him, and in the sense in which he has reason to suppose it is understood by the vendee, when to give it another construction will result in deceit, or injustice, or defeat the just and known expectations of benefits of those with whom he deals for an adequate con-

sideration, upon the plainest principles of justice. *Paul* v. *Travelers' Ins. Co.* (1889), 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. 758; *Allen* v. *St. Louis Ins. Co.* (1881), 85 N. Y. 473; *Noonan* v. *Bradley* (1869), 9 Wall. 394, 19 L. Ed. 757; *Garrison* v. *United States* (1868), 7 Wall. 688, 19 L. Ed. 277; *Street* v. *Chicago Warfing, etc., Co.* (1895), 157 Ill. 605, 41 N. E. 1108; *Massie* v. *Belford* (1873), 68 Ill. 290; *Sparling* v. *Marks* (1877), 86 Ill. 125; *Commercial Ins. Co.* v. *Robinson* (1872), 64 Ill. 265, 16 Am. Rep. 557; *Aurora Fire Ins. Co.* v. *Eddy* (1868), 49 Ill. 106; *City of Alton* v. *Illinois Transp. Co.* (1850), 12 Ill. 38, 58 Am. Dec. 479; *Evans* v. *McConnell* (1896), 99 Iowa 326, 63 N. W. 570, 68 N. W. 790; *Powell* v. *Chittick* (1893), 89 Iowa 513, 56 N. W. 652; *McClintock* v. *Emick* (1888), 87 Ky. 160, 7 S. W. 903; *Thoubboron* v. *Lewis* (1880), 43 Mich. 635, 5 N. W. 1082, 38 Am. Rep. 218; *Town of Royalton* v. *Royalton, etc., Turnpike Co.* (1842), 14 Vt. 311. Also that in an article sold by the manufacturer for an intended use known to him, there is an implied warranty that it is reasonably fit for, or adapted to that use, at least against defects not open and visible, but that can not be true as to an express warranty which negatives such implied warranty, or with respect to a use not known as intended, or that it will do a particular work. *Reeves* v. *Byers, supra; Conant* v. *National State Bank, supra; Fitzmaurice* v. *Puterbaugh* (1897), 17 Ind. App. 318, 45 N. E. 524; *Brenton* v. *Davis* (1847), 8 Blackf. 317, 44 Am. Dec. 769; *Nashua Iron, etc., Co.* v. *Brush* (1898), 91 Fed. 213, 33 C. C. A. 456; *Hoe* v. *Sanborn* (1860), 21 N. Y. 552, 78 Am. Dec. 163; *Rasin & Co.* v. *Conley* (1881), 58 Md. 59; *Rice* v. *Forsythe* (1874), 41 Md. 389; *Craver* v. *Hornburg* (1881), 26 Kan. 94; *J. I. Case Plow Works* v. *Niles & Scott Co.* (1895), 90 Wis. 590, 63 N. W. 1013; *Boothby* v. *Scales* (1871), 27 Wis. 626.

If it resolves itself into the situation that one of the parties means and intends one thing, and the other party

548    SUPREME COURT OF INDIANA,

Winnemucca Water, etc., Co. *v.* Model Gas, etc., Works—179 Ind. 542.

means and intends another, it is manifest that the first element of a contract, the mutual meeting of the minds of the parties, is lacking, and there is no contract. *Indiana Fuel Supply Co.* v. *Indianapolis Basket Co.* (1908), 41 Ind. App. 658, 84 N. E. 776; *Mummenhoff* v. *Randall* (1898), 19 Ind. App. 44, 49 N. E. 40. If it is a mutual, or common mistake, it is voidable; if it is a mistake of law of one of the parties, in the absence of fraud, he must bear the consequences. It would be otherwise if the real intention of the seller is one thing, but if he manifests an intention to another to induce him to act upon the intention so induced, he will be estopped to deny that the intention so manifested was not his real intention. *J. A. Coates & Sons* v. *Buck* (1896), 93 Wis. 128, 67 N. W. 23. We are not to be understood that under some circumstances there may not be relief from a mistake of law.

The complaint counts upon the contract as written, as requiring as a matter of law that the engine should develop 150 horse power net, that is, irrespective of loss of power from friction, etc. The complaint does not claim any recommendation or representation as to its being adapted to, or suitable for, or that it would do the work of appellant, and there is no warranty, except as to the horse power and the fuel per horse power. From the evidence it is adduced that it is the custom of the trade to reckon the gross, and not the net horse power in supplying engines of a rated horse power, and that forty per cent of the rated power, is the average loss from friction. Under the tests as made, about nine per cent was computed for the inefficiency in the generators, and in addition a 36-inch waterwheel was geared to the shaft, the percentage of reduction of power to move which, is not shown, and the tests were not made by a reliable method, so that it is impossible from the evidence to determine what power was actually developed by the engine when geared to the machinery. The questions then are, Did the court err in instruct-

ing that the horse power developed at Peru is the power contracted for, and was there anything further for determination of the jury? It is urged that it was for the jury to determine whether the power was to be rated at Peru, or when the engine was geared for running. In the absence of any claim on the part of appellant, of a representation as to what net power would be developed, or notice of the net power required for its purposes, or guaranty of the sufficiency of the engine to perform the work expected by appellant, or manifestation of an intention to induce appellant to believe that it was to obtain 150 horse power net, it appears at most, that appellant was mistaken both as to the fact and the law, without deceit or fraud, on the part of appellee, and under such state of the record we perceive no ground of objection to the charges given by the court.

7. As there was no finding or judgment against appellant on the counterclaim, no error could be predicated upon the ruling on the demurrer to that pleading. We are not able to discover any error, and the judgment is affirmed.

NOTE.—Reported in 101 N. E. 1007. See, also, under (1) 35 Cyc. 454; (2) 35 Cyc. 392, 454; (3) 35 Cyc. 95, 97; (4) 35 Cyc. 392, 395; (5) 9 Cyc. 245, 388; (6) 35 Cyc. 95, 412; (7) 31 Cyc. 358. As to breach of warranty in cases of sales of machinery, see 102 Am. St. 620. As to remedies of vendee for breach of warranty of quality, see 54 Am. Dec. 146. On the question of implied warranty of fitness of a particular article bought for special purpose, see 22 L. R. A. 187; 15 L. R. A. (N. S.) 855, 868; 31 L. R. A. (N. S.) 783; 34 L. R. A. (N. S.) 737. For express warranty as to quality excluding implied warranty as to quality, see 33 L. R. A. (N. S.) 501.