290 So.2d 552 (1973)
David C. GOODMAN, Appellant,
v.
Harvey GOODMAN and Benez, Inc., a Corporation, et al., Appellees.
No. P-291.
District Court of Appeal of Florida, First District.
August 30, 1973.
Rehearing Denied October 18, 1973.
*553 David R. Lewis, of Blalock, Holbrook, Lewis, Paul & Bennett, Jacksonville, for appellant.
Goldstein & Goldstein, Albert Datz, of Datz, Jacobson & Dusek, and John S. Duss, of Duss, Butler & Marees, Jacksonville, for appellees.
WIGGINTON, Acting Chief Judge.
Appellant-David C. Goodman brought suit for damages allegedly suffered by him as a result of appellees' failure or refusal to consummate a contract of purchase and sale involving a parcel of unimproved real estate in Duval County. From an adverse judgment Goodman has appealed.
Appellee-Benez, Inc., a corporation, together with some of its individual stockholders collectively own a parcel of unimproved land which appellant-David C. Goodman was interested in purchasing. The Benez owners entered into a written option contract with Goodman by which they agreed to convey the land to him or his assign for a specified purchase price, the option containing such provisions as the amount to be paid at the time the option was exercised, the amount of down payment to be made at the time of closing, a provision for a purchase money mortgage to be given by the purchaser, and an agreement for a release clause by which portions of the land could be released from the lien of the mortgage prior to final payment thereof. David Goodman thereafter negotiated with appellee-Harvey Goodman, as a result of which Harvey agreed to purchase from David the option held by the latter on the Benez property. David and Harvey entered into a separate written agreement by which Harvey agreed to pay David a stipulated sum of money as his "profit" in the transaction, a portion of which sum was to be paid in cash at the time of closing the purchase transaction with Benez, the balance to be paid in deferred payments over a period of ten years. Harvey paid to the escrow agent the initial payment required to be paid upon notification by him of his intention to exercise the option, and the transaction proceeded in an uneventful manner.
In an exchange of correspondence it was expressly or impliedly agreed between Harvey and Benez that several critically material aspects of the transaction would be left open for later determination at the *554 time of closing. At the closing conference, where all parties were present, a dispute arose as to the terms and provisions set forth in the proposed purchase money note and mortgage which were tendered to Harvey for execution. It is apparent from the record that Harvey interpreted the option agreement to mean that the purchase money mortgage would provide for an initial payment and subsequent deferred payments in certain specified amounts, whereas the owners Benez intended the payments to be in different amounts. Harvey also interpreted the release provisions contained in the option agreement to mean one thing, while the Benez owners intended for them to mean something altogether different. As the discussion between the parties proceeded, it became more heated and resulted in name calling which terminated when the attorney for Benez belligerently announced that the transaction was "dead" and ordered everyone out of his office. Harvey accepted the termination of the transaction by Benez and departed for his home in New York, promptly notifying the escrow holder not to disburse the initial payment made by him under the option agreement. A few days later David, in an attempt to reconcile the differences between Harvey and Benez, made certain proposals to the latter, as a result of which Benez offered to revive the transaction by accepting a purchase money note and mortgage drafted strictly in accordance with the provisions of the option agreement and essentially in accordance with Harvey's interpretation of the option contract. Harvey refused to enter into any further negotiations with either David or Benez and took the position that he was released from any and all liability to either of them. David then brought this action against both Harvey and Benez seeking a judgment for an amount representing the loss to him of his prospective "profit" in the transaction which he could have expected to receive had the contract for the purchase and sale of the property not been breached by appellees.
It is appellant's position that the option agreement assigned by him to Harvey ripened into a binding contract of purchase and sale at the moment Harvey gave notice of his intention to exercise the option and paid to the escrow agent the advance deposit called for in the agreement. Appellant asserts that the terms and provisions of the option agreement are clear and unambiguous and that Harvey breached the contract when he refused to consummate the transaction by accepting a deed to the land and executing the purchase money note and mortgage tendered to him at the closing conference. Benez agrees with appellant that the option agreement ripened into a firm contract of purchase and sale upon its exercise by Harvey and that the latter breached the contract by refusing to sign the purchase money note and mortgage tendered him at the closing. Benez therefore reasons that since it was Harvey who breached the contract and the sellers were at all times ready and willing to close the transaction strictly in accordance with the terms of the option agreement, they are not liable to David for the damages he claims.
On the contrary, Harvey contends that the terms and provisions of the option agreement are vague and ambiguous and his notice of election to exercise the option by making the initial payment to the escrow agent constituted nothing more than an agreement to later work out the details of the transaction in a manner acceptable to both parties. He insists that his interpretation of the provisions of the option agreement is just as reasonable as is the interpretation placed upon it by David and Benez. He therefore reasons that since there was never a meeting of the minds as to the exact terms and provisions to be incorporated in the purchase money note and mortgage regarding the amount of the deferred payments to be made thereunder and the exact manner in which land could be released from the lien of the mortgage, there never came into being an enforceable contract of purchase and sale. Harvey *555 takes the position that even if a contract existed it was breached when the attorney representing Benez suddenly concluded the closing conference by declaring the transaction dead and ordering all of the principal parties out of his office. Harvey concludes that he was justified in accepting termination of the contract, declining to participate further in negotiations concerning the transaction, and disclaiming any further liability either to David or to Benez. In taking this position, he relies on the generally accepted principle that where a contract is violated by one of the parties thereto, the other party is released from any further obligations and his liability thereunder is discharged.[1]
The trial court found from the evidence adduced at the trial that the provisions of the option agreement left open for future consideration of the parties several critically important aspects of the transaction relating to the selection and release of a portion of the land at the time of closing and the selection and release of other land which would be subject to the lien of the purchase money mortgage. Based upon this finding the court concluded that the option agreement never ripened into a contract of purchase and sale because there was never a meeting of the minds on all material aspects of the transaction nor an acceptance by the purchaser of a certain and definite offer by the seller.
It is an established principle of real property law that an option to purchase land is but a continuing irrevocable offer by the seller until expiration of the time limited which ripens into a binding contract of sale only upon the optionee's acceptance of the offer within the time stipulated. Whether there has been such an acceptance as to create a binding contract is determined by rules governing acceptance of any other offer.[2]
The rule governing acceptance of an offer under circumstances sufficient to create a binding contract was said by the Supreme Court in Strong & Trowbridge Co. v. H. Baars & Co.[3] to be:
"In order to create a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense... ."
The Supreme Court of Indiana elucidated the foregoing rule when it held that if a controversy resolves itself into a situation where one of the parties meant and intended one thing and the other meant and intended another, it is manifest that the first element of a contract, the mutual meeting of the minds of the parties, is lacking and there is no contract.[4]
Williston, in his work on contracts, proclaims the general rule to be that where a phrase of a contract is reasonably capable of different interpretations, and is in fact differently understood, there is no contract.[5]
Our review of the record reveals competent and substantial evidence sufficient to support the finding of fact by the trial court. We cannot agree with appellant that, in the conclusions reached, the court applied to the facts found by it incorrect principles of law.
In addition to the foregoing, Harvey contends that under no circumstances can *556 he be held liable to David for the latter's loss of prospective profit in this transaction. He takes this position for the reason that the separate contract they signed with each other at the time of the assignment of the option contract to Harvey provided:
"Notwithstanding anything to the contrary contained herein, if ... Buyer (or his nominee) does not purchase the property for any reason whatsoever, Buyer shall have no obligation to Seller hereunder. .. ." (Seller refers to David, and Buyer refers to Harvey.)
Similarly, Benez likewise contends that under no circumstances can it be held liable to David for the damages he seeks. It takes this position for the reason that upon David's assignment of the option agreement to Harvey, there no longer existed any privity of contract between them nor any obligation on its part to protect David in his claim to a prospective profit growing out of his contract with Harvey.
We are inclined to agree that the foregoing defenses interposed by appellees Harvey and Benez are well taken and constitute additional reasons why David is not entitled to a recovery against either of appellees on the breach of contract theory. If he has a cause of action against them, a question on which we express no opinion, it would necessarily be in tort for interference with contract relations existing between him and Harvey, but not upon the contract itself.
For the foregoing reasons, the judgment appealed herein is affirmed.
JOHNSON, J., specially concurs.
SPECTOR, J., dissents.
JOHNSON, Judge (specially concurring):
I concur in the results reached by Judge Wigginton in that the trial court was correct in dismissing the amended complaint filed by David C. Goodman, but I think the trial court was in error in his finding of fact and ruling thereon. I think the opinion of Judge Wigginton falls into this same error in the facts. I think that the option assigned to Harvey Goodman by David Goodman, had ripened into a binding contract between Benez, Inc. as owners, and Harvey Goodman, as assignee of the option when the down payment was made pursuant to the option. At that point, either Harvey Goodman or the Benez, Inc. group as sellers, could have legally forced compliance with the sale and purchase agreement. David, however, had assigned away his right to enforce compliance with the option. His rights stems from a tort, if any. So far as Harvey is concerned, the agreement between Harvey and David precluded David from having a cause of action on the option because it was agreed between Harvey and David that if the "Buyer... does not purchase the property for any reason whatsoever, Buyer shall have no obligation to Seller (David Goodman) hereunder ..." However, I do not think the trial court should have proceeded with the taking of testimony as to the merits of the option contract, nor to the question of whether or not the option was exercised. As far as David Goodman's rights were concerned, the pleadings of the parties were determinative of this issue, against David Goodman as the trial court did in fact determine.
The facts as found in the record before us supports the contention that the option was valid. However, the record also supports the fact that the original real estate owners who executed the option, and the assignee from David Goodman, had mutually terminated the option contract. Whether or not this termination between the Benez, Inc., and Harvey Goodman was tainted so as to give rise to a cause of action in tort against either or all of the defendants in favor of David Goodman, is a question not before us in this cause. Therefore, although the trial court used the wrong *557 premise upon which to base his order of dismissal, the result was the same and correct.
I would, therefore, affirm the order appealed and to that end I concur only in the opinion of Judge Wigginton as to the affirmance of the trial court's order dismissing the amended complaint.
SPECTOR, Judge (dissenting):
I respectfully dissent from the majority opinion.
The trial court and now the majority of this court have concluded that the option agreement obtained by David Goodman is an unenforcible contract because it "... left open for future consideration of the parties several critically important aspects of the transaction relating to the selection and release of a portion of the land which would be subject to the lien of the purchase money mortgage". The majority, as did the court below, then proceeds to buttress its judgment with citations of leading cases and black letter hornbook law all of which stand for the proposition that there must be a meeting of the minds before a contract can be said to exist. Strong & Trowbridge Co. v. H. Baars & Co., supra, is a clear and cogent statement of the proposition. It is a universally accepted principle of the basic law of contracts, to wit:
"In order to creat a contract, it is essential that there should be a reciprocal assent to a certain and definite proposition. So long as any essential matters are left open for further consideration, the contract is not complete, and the minds of the parties must assent to the same thing in the same sense... ."
Were the option contract in the case sub judice lacking in those essential qualities noted above and in virtually all of the authorities, there would be no room for equivocation, much less dissent. However, such essentials are not lacking in the option contract in this case. To hold otherwise, as does the majority, the court necessarily holds that a land contract for the sale of acreage which provides for releases from the mortgage lien upon payment of a stipulated sum are invalid unless the contract specifies in advance the particular parcels that are to be released upon the subsequent payments and the sequential order upon which such releases are to be made. I do not understand that to be the law, and I daresay that there are literally thousands of land sales contracts that have been entered into by vendors and vendees under the tutelage of their attorneys in reliance upon the assumption that the vendee may obtain release of portions of the parent parcel upon making the stipulated payments.
Appellant David Goodman's paid option to purchase 723 acres from appellee Benez, Inc., and its stockholders as individuals, contained the following material provisions:

"Purchase Price. In event of exercise of this option, the Holder will buy the above described property at a total price of $550,000.00, of which the money paid this date shall be part. The downpayment, to be paid at closing of sale, will be 29% or $159,500.00, the balance will be paid by a purchase money note and mortgage of $390,500.00, commencing at the date of closing, providing interest on the unpaid balance thereof, at the rate of 7.5% per annum, running for a term of ten years.
* * * * * *
"RELEASES. The property shall be released from the above described mortgage at the rate of $1,250.00 per acre. However, each release shall border on and be contiguous with the preceding release, and no release or releases shall have the effect of leaving unreleased land as an island or without access to road frontage. At no time will the proportion of released road frontage on Pecan *558 Park Road exceed the other released land. Subject to the above, the choice of released land shall be with the Holder." (Emphasis supplied)
The option further provided that it was to be exercised by payment of $54,000.00 to the broker together with a letter expressing intent to exercise the option. It was further provided that the balance of the downpayment, to wit, $104,500.00, was to be paid at closing. The sellers were to then provide the buyers with a warranty deed and agreed to take back a note and mortgage for the balance to be secured by the subject property, less the 127 acres agreed to be released with and pursuant to the downpayment.
In essence, the court below held appellant's option contract to be unenforceable because the 127 acres to be released at the closing or, alternatively, not to be included in the purchase money mortgage had not been specifically designated in the option to purchase contract itself. The trial court's ruling that the contract was not binding led to the ultimate holding that appellant David Goodman could not recover damages from either Harvey Goodman or the selling appellees.
In holding thusly, the trial court misconceived the binding nature of a land sales contract which contains a release clause embodying an indefinite subsidiary portion of the agreement. In Stone v. Austin, 107 So.2d 232 (Fla.App. 1958), the court held that a land sales contract was not too indefinite because the terms of a release clause were to be later agreed upon, that is, after the sales contract had been executed. The court stated that such details were subsidiary portions of an otherwise valid agreement and that absolute certainty was not necessary. The court stated, at pages 235, 236:
"The release clause was ostensively for the benefit of the purchaser and regardless whether the agent of the purchaser dictated this release clause or not, any ambiguity in the language would be visited against the purchaser. Consolidated Development & Engineering Corporation v. Ortega Co., 117 Fla. 438, 158 So. 94... ."
The trial court's holding that the contract was unenforcible for indefiniteness was reversed by the court even though the price for each individual release had not yet been agreed upon, it being held sufficient that the total of all such sums should not exceed the amount of the mortgage.
The general rule as to the validity of a contract to convey title to unlocated acres out of a larger tract is stated in 117 A.L.R. 1071-1086, in an annotation entitled "Deed of Undesignated Part of Tract", Part IV, as follows:
"Under the authorities generally, it is clear that a deed is not void which purports to convey, out of a larger tract of land presumably owned by the grantor, a stated number of unlocated acres to be selected at the will of the grantee [citations omitted] or to be located in accordance with general specifications [citations omitted]."
In Williams v. Ellison, 486 S.W.2d 186 (Tex.Civ.App. 1972), the court held that an option to purchase an undesignated ten acres out of a larger specified tract, provided that at least a portion of the boundary line of one tract was contiguous to a portion of the boundary line of the other tract and that the ten acre tract should not include any portion of a one acre square centered around a water well, was not too vague, indefinite and uncertain to be enforceable. In Corbin v. Jackson, 14 Wend. N.Y. 619, the court held that a grant of a specific but unlocated part of a larger tract will not for that reason be held void for uncertainty, provided a right of election is given and a subsequent location made under and in pursuance of such right. In Corbin, a deed granted 600 acres of land to *559 be surveyed or taken off a large tract, and by the terms of an instrument referred to in the deed, the tracts were to be divided into lots of 100 acres each, and an election of lots was given to the grantees, which they subsequently made. It was held that though by the terms of the deed the premises granted were undefined and uncertain, still that the subsequent location, in pursuance of the right of election given by the deed, rendered that certain and definite which was before uncertain and vested a legal title in the specific parts elected to be taken by the grantees.
The authorities cited above are ample authority for the proposition that the option agreement in the case sub judice is not so vague or indefinite so as to be unenforcible. It follows then that the breach of such an agreement entitles the person injured thereby to recover damages.
Since the trial court did not proceed beyond the ruling that the option to purchase is not a binding agreement, the next question; that is, whose breach caused David Goodman's loss to occur, was never reached.
There is ample evidence in the record based on which the trial court could find that the seller's breach of the option contract caused the loss sustained by appellant David Goodman. The seller's breach is supportable by the evidence that the seller's attorney insisted on substituting a different release clause in the mortgage instrument presented at the closing than that which had been agreed upon in the option contract. If the trial court should find that the seller's continued insistence on the new and different release clause was the reason David was deprived of the benefit of his bargain, then David is entitled to his damages from the sellers as prayed for in his complaint against them.
On the other hand, the record also contains evidence which if believed by the trial court could be the basis for a finding that Harvey's refusal to close the transaction when the sellers later relented and agreed to abide by the release clause in the option agreement was the cause of David's loss of his profit. It is to be noted that contemporaneous with David's assignment of the option to Harvey, the latter agreed in writing to give David thirty days notice before the option agreement expired of any intention on his part not to close the transaction pursuant to the option agreement. It may well be that Harvey's ultimate refusal to close pursuant to the later acquiescence by the sellers was a breach of Harvey's agreement with David to give him the thirty days notice of intent not to close and that said breach was the cause of David's loss. A further factor yet to be considered by the trial court is whether the uncontradicted evidence that Harvey purposely and intentionally precipitated a series of confrontations with David over the latter's anticipated profits was evidence of his failure to close as he agreed to do in absence of notice to David. In my view, the lower court and this court's majority have overlooked the significance and binding effect of Harvey's agreement and duty to give David the thirty days notice that he was not going to close so that the latter could protect himself against loss of his bargain.
No further evidence need be taken for there is ample record based upon which the trial court could find against either the sellers or Harvey Goodman for it is crystal clear that one or the other by his conduct is responsible for "blowing the deal" by which appellant David Goodman stood to to gain his earned profit. In fine, I think this case should be remanded for a finding by the trial court as to whether David Goodman's loss resulted from Harvey's truculence over the profits to be reaped by David or the seller's recalcitrance engendered by the belated realization that the property was worth considerably more than they agreed to sell it for.
I would reverse and remand in accordance with the above opinion.

*560 ON PETITION FOR REHEARING
Petition for Rehearing having been considered,
It is ordered that the petition is denied by WIGGINTON and JOHNSON, JJ.
SPECTOR, Judge.
"I would grant appellant's petition for rehearing and reverse the judgment reviewed herein for the reasons stated in my dissenting opinion".
NOTES
[1] 7 Fla.Jur. 229, Contracts, § 164; Bryan and Sons Corp. v. Klefstad, (Fla.App. 1970) 237 So.2d 236, 238.
[2] 55 Am.Jur. 506, Vendor & Purchaser, § 38; Ratner v. Coral Television Corporation, (Fla.App. 1962) 139 So.2d 437.
[3] Strong & Trowbridge Co. v. H. Baars & Co., 60 Fla. 253, 54 So. 92, 93; See also Webster Lumber Co. v. Lincoln, 94 Fla. 1097, 115 So. 498.
[4] Winnemucca Water & Light Co. v. Model Gas Engine Works (1913), 179 Ind. 542, 101 N.E. 1007.
[5] 1 Williston on Contracts 344, § 95 (3rd Edition).