Filed June 6, 1894.

———————◆———————

No. 680.

GRAND RAPIDS AND INDIANA RAILROAD COMPANY *v.* DIETHER ET AL.

COMMON CARRIER.—*Receiving Goods Without Prepayment of Freight.— Demand for Freight Charges.—Delivery.—Railroad.*—If a common carrier receives goods for carriage without requiring prepayment, it is not entitled to demand its freight charges until its duty has been performed, either by delivery or offer to deliver at the place of destination.

SAME.—*Duties of.—Demand for Freight Charges.—Succeeding Carrier.*— And if, under such state of facts, the goods are to be delivered to a succeeding carrier, the carrier having the goods in charge must place them at the point of delivery to the succeeding carrier, or show a good excuse for its not being done, before it can rightfully demand its charges.

SAME.— *When Its Rights as a Warehouseman Begin.*—Until a carrier's duty as such is terminated by a performance of all the duties devolving upon it, its rights as a warehouseman do not begin.

SAME.—*Nonperformance of Duty.—Excuse.—Refusal of Connecting Carrier to Receive Goods and Assume Charges.— Warehouseman.*—The refusal of a connecting and succeeding carrier to receive goods and assume the charges accrued is not sufficient to excuse the carrier having the goods in charge from any further attempt at performance of the duties on its part; but it must perform all the duties devolving upon it, or show a good excuse for not performing them, before its duties as a carrier cease or its rights as a warehouseman begin.

From the Allen Superior Court.

*A. A. Chapin,* for appellant.

*T. E. Ellison,* for appellees.

GAVIN, J.—This was an action brought by appellees to recover the possession of a car load of lumber alleged to have been wrongfully detained by appellant.

The only questions presented arise upon the motion for a new trial.

On July 10th, 1891, a car load of lumber was shipped from Eagle Mills, Ark., directed to appellees, at Fort Wayne, Ind., Ft. W., C. & L. delivery. A bill of lading was issued to the shippers, and a waybill was forwarded with the car showing the destination to be Fort Wayne, Ind., Ft. W., C. & L. delivery, by which was meant the station of the Lake Shore and Michigan Southern Railway Company at Fort Wayne, which was used by the Fort Wayne, Chicago and Louisville Railway Company. After passing through the hands of several carriers, the car was delivered to appellant, at Winchester, together with the waybill, and was hauled by it to its yards in Fort Wayne, where it arrived July 21st, 1891. The terminus of appellant's road was at a Y, about one and one-half miles from its station and about one mile from the L. S. & M. S. depot, the destination of the car named in the waybill.

According to the usual mode of doing business the appellant would put the car upon this Y, whence it would be taken by the connecting line. On July 22d the appellant notified appellees of the arrival of the lumber, with the amount of charges, $69.48, and that the goods would remain at the station at appellees' risk, subject to charges for storage after twenty-four hours. Three or four days after giving this notice appellant called up the L. S. & M. S. agent by telephone and asked him if he would accept the car. He refused to accept the car and pay or assume the freight charges already incurred. Appellant made no further or other effort to deliver the car to the connecting carrier, nor was there any further communi-

cation between appellant and appellees until the tender and demand, except as indicated by the following evidence:

Question (to Mr. Diether). Did you ever talk over the telephone with Mr. Clisbee (appellant's agent) about this car? Ans. Yes.

Q. Did you ask about the car, or say anything to him about the car, or say anything to him except about putting the car over on the other road? Ans. He telephoned me and asked if we would pay the freight and take the car. I told him that if he would put the car over there, I said we would take care of it and pay the freight.

Q. What did he say in answer? Ans. He said he had instructions from the general freight agent not to deliver the car until the freight was paid. This was about two weeks after the arrival of the car.

Of this conversation, Mr. Clisbee had no recollection. About August 26th appellees tendered to appellant the freight charges and demanded the lumber, but their demand was refused, appellant claiming an additional $1 per day for use of car, or demurrage.

A number of questions arise in different ways, but the vital question is whether or not appellant had performed its duty in full prior to the tender and demand. If it had not, or fails to show a good excuse for its nonperformance, then it was in the wrong in claiming storage, even if under proper circumstances such a charge may be made and sustained by a lien on the goods.

Without stopping to determine whether or not a lien is allowed for storage charges, in the absence of a contract, and without stopping to inquire whether the goods were received under the bill of lading, we assume the duty of the appellant to have been simply to safely carry

the lumber to the end of its line, and there deliver it to a connecting carrier to be forwarded to its final point of destination. This obligation rested upon it without any special contract. Hutch. Carriers, sections 149, 149a, 102a; 2 Redf. on Rys., section 180; 2 Am. and Eng. Encyc. of Law, 867; *McDonald* v. *Western R. R. Corp.* 34 N. Y. 497; *Lawrence* v. *Winona, etc., R. R. Co.*, 15 Minn. 390.

The appellant, as a common carrier, was entitled to demand payment of its charges in advance, but by accepting the goods for carriage without requiring prepayment, this right was waived. Hutch. Carriers, section 469.

A common carrier, which has received goods for carriage without requiring prepayment, does not then become entitled to demand its freight charges until its duty has been performed, either by delivery or an offer to deliver at the place of destination. Hutch. Carriers, section 469; *Holliday* v. *Coe*, 3 Ind. 26; *Rogers* v. *West*, 9 Ind. 400; 2 Redf. Rys., section 188, pars. 1 and 33.

The utmost, then, that could have been rightfully claimed by appellant was that its charges should be paid when it had carried the goods to the end of its line and was ready to deliver them to the succeeding carrier. Until this was done, or at least a good excuse shown for its not being done, appellant was not entitled to demand payment of its charges from any one.

Whether or not, having received these goods as a connecting carrier for shipment to a point beyond its line, without demanding payment in advance, it thereby waived any right to demand its charges until the final point of destination was reached, and should have asked of the succeeding carrier that it should collect its charges

rather than to have demanded an absolute assumption of them, we do not find it necessary to determine.

The notice given to appellees on July 22 was given before appellant had made any attempt to deliver the goods to the succeeding carrier, and without having carried them to the end of appellant's line. Appellant was, therefore, not entitled to charge storage by reason of the failure of appellees to pay the charges at that time or to receive the goods at the place where they then were, and there was no default upon the part of appellees by reason of their failure to comply with the requirements of that notice. When then, if ever, did the appellees become in fault?

According to the evidence of appellant this notice was the only communication between the parties until the tender and demand were made. Counsel for the appellant, in his argument, assumes that appellees had wrongfully refused to pay. For this we are unable to find any support in the evidence.

That appellant never did place the car upon the Y at the end of its line where it could have been received and carried forward by the connecting carrier is undisputed. For its nonperformance of that which was essential to justify a demand for the payment of their charges, no excuse is offered by the evidence save the fact that the connecting line, when asked about receiving this car, refused to receive it and assume charges. This refusal alone was not sufficient to excuse the appellant from any further attempt at performance, and to authorize it to treat the contract as fully performed upon its part and its duty as carrier terminated.

No notice of this refusal was given to appellees. There was not even an offer by appellant to put the car upon the Y if appellees would pay their charges.

The evidence of Diether that the agent asked him by

telephone if they would take that car and pay the freight, can not be construed as an offer to deliver at the Y if they would pay the freight. Diether was under no obligation to pay the freight and take the car at the appellant's station, where it then was. This conversation gave no intimation to appellees that appellant was willing to move the car a single foot from the place where it was then standing. Had the car been placed upon the Y and appellees notified of that fact and that the car would not be forwarded without payment of charges accrued, or if the evidence even showed that appellees had been notified of the connecting carrier's refusal to receive the car upon the terms offered, quite a different question would be presented.

We are called upon to deal simply with the case brought before us by the record, and as to that it is sufficient to say that the facts show neither performance nor excuse for nonperformance of its duty by appellant. Its duty as a carrier had not been fulfilled when the demand and tender were made; until its liability as a carrier terminated, its rights as a warehouseman would not begin. *Pittsburgh, etc., R. W. Co.* v. *Nash,* 43 Ind. 423.

Appellees were entitled to notice of the succeeding carrier's refusal to accept the goods. Hutch. Carriers, section 103a.

These views of the law applicable to the facts in this case render it unnecessary for us to take up in detail the consideration of the various propositions advanced by appellant's learned and ingenious counsel. Neither is it necessary to consider each instruction given or refused, for with the law and the facts as we have found them to be, any errors in the instructions complained of could not but be harmless, and therefore no cause for reversal. R. S. 1894, section 670; *City of Lafayette* v. *Ashby,* 8 Ind. App. 214.

Grand Rapids and Indiana Railroad Company *v.* Diether *et al.*

As a general rule, the insufficiency of the evidence to sustain answers to interrogatories which could in no event control the general verdict, will not justify the court in granting a new trial for want of evidence. *Staser* v. *Hogan*, 120 Ind. 207 (228); *Chicago, etc., R. R. Co.* v. *Kennington*, 123 Ind. 409.

It is further contended that the court erred in permitting the money to be paid into court as a tender, for the reason that the money paid in was not the identical money tendered. In this there was no error. *Colby* v. *Stevens*, 38 N. H. 191; *Michigan, etc., R. R. Co.* v. *Dunham*, 30 Mich. 128; *Curtiss* v. *Greenbanks*, 24 Vt. 536.

In *Evansville, etc., R. R. Co.* v. *Marsh*, 57 Ind. 505, it is held that in an action such as this it is necessary to plaintiff's recovery that he should follow up his tender by paying the "amount of the lien tendered into court."

This was done in this case.

Judgment affirmed.

Filed April 6, 1894.

### On Petition for a Rehearing.

Gavin, J.—After a reëxamination of the original opinion in this case, there would not seem to be a very wide difference between the theory of the law upon which the case is there decided and the views expressed by counsel in their petition for rehearing, although we did not then, and do not now, deem it necessary to decide some of the questions so ably presented by appellant.

The learned counsel says: "I concede that the appellees were entitled to notice that their lumber had arrived, and that it was not forwarded, and the reason why such was not the case, if they did not know it already. The reason of this is that the owner may be enabled to protect himself from loss."

The only source from which counsel claim this information to have been shown to be possessed by Diether is from his conversation with Clisbee, set out in the original opinion.   We are unable to construe this conversation to convey to appellees knowledge of the connecting carrier's refusal to receive the car and pay the freight, which fact alone could have justified their demand for the payment of their freight at that time.

Attention is called to one or two slight inaccuracies in the statement of facts.   Granting them to exist, they are such as could not in the slightest degree affect the result in the cause.

As to the damages recovered in the court below, since the appellees offered to remit $10 thereof, but the court seems to have overlooked it, we have concluded to order a credit upon the judgment for that amount as of the date thereof.

Upon this condition, the petition for rehearing is overruled, at the costs of appellant.

Filed June 21, 1894.