## ABELMAN *v.* HAEHNEL, ADMINISTRATOR.

[No. 8,546. Filed February 26, 1914. Rehearing denied May 26, 1914. Transfer denied October 8, 1914.]

1. BILLS AND NOTES.—*Consideration.*—*Gifts.*—A promissory note executed solely as a gift or donation can not be enforced by the payee against the maker or his estate, but until actually paid is regarded merely as a promise to give, even though made payable at a bank. p. 20.

2. EVIDENCE.—*Sufficiency.*—*Appeal.*—Where the evidence supplies reasonable grounds for inferring facts essential to a recovery or defense, it is sufficient, and the findings based thereon are conclusive on appeal. p. 21.

3. APPEAL. — *Review.* — *Findings.*—*Conclusiveness.*—Where there was undisputed evidence to justify an inference that notes sued on were executed without any consideration, a finding to that effect was conclusive upon the issue presented by an answer of no consideration. p. 21.

4. BILLS AND NOTES. — *Review.* — *Sufficiency of Evidence.* — *Inferences.*—Where there was evidence to support a finding that the presumption of delivery raised by possession of the notes sued on was overcome by the evidence, and that the notes were

not executed, such finding is conclusive as against alleged insufficiency of the evidence. p. 23.

5. APPEAL.—*Review.—Answers to Interrogatories.—Clerical Mistake.*—An answer to an interrogatory stating that a note in suit was not executed on or about "Nov. 2, 1909", will be treated as a finding that the note was not executed on "Nov. 2, 1907", where it appears from a consideration of the other interrogatories and· of the record that the latter date was intended, and that "1909" was a clerical error. p. 23.

6. EXECUTORS AND ADMINISTRATORS.—*Pleading.—Special Pleas.*—An administrator by filing special pleas not required by the statute limits his defenses to those pleaded. p. 24.

7. BILLS AND NOTES.—*Non Est Factum.—Burden of Proof.*—The burden of proof as to the execution of notes sued on is not shifted by the filing of a plea of *non est factum.* p. 24.

8. APPEAL.—*Review.—Evidence.—Sufficiency.*—The objection that there was no evidence to disprove the execution of notes sued on, or at least not more than a scintilla of evidence tending to disprove their execution, can not prevail in view of evidence shown by the record warranting an inference that they were not executed. p. 24.

9. APPEAL.—*Presenting Questions for Review.—Motion for New Trial.—Grounds.—Insufficiency of Evidence.*—Where the jury's answers to interrogatories are in harmony with the general verdict, no question is presented by an assignment as cause for new trial that such answers are not sustained by sufficient evidence, but the insufficiency of the evidence is presented by assigning that the verdict is nǒt sustained by sufficient evidence. p. 25.

10. APPEAL.—*Review.—Harmless Error.—Instructions.*—In an action on notes, the execution of which was denied, where the jury's answers to interrogatories showed that it did not find or intend to find that the alleged maker was of unsound mind, but that the verdict for defendant was based upon something else, error in the giving or refusing of instructions relating to unsoundness of mind was harmless. p. 27.

11. APPEAL. — *Review. — Harmless Error. — Instructions.*—Alleged error in the giving of instructions on the subject of fraud in procuring the execution of notes sued on is harmless where it affirmatively appears from the record that the jury found for appellee upon the issue of *non est factum* and of no consideration. p. 28.

12. APPEAL.—*Review.—Harmless Error.—Incomplete Instruction.*—In an action on notes, where the jury found that plaintiff had been paid all that was owed him, and that the notes did not represent any *bona fide* debt, and it did not appear that they were given for any inconvenience, damage or detriment to plaintiff, an

instruction indicating that there could be no consideration for the notes unless plaintiff gave something for them, though giving too narrow a definition of a good consideration, was not harmful or misleading.  p. 30.

13. BILLS AND NOTES.—*Consideration.*—Any damage, inconvenience or detriment to the promisee, is a sufficient consideration for the execution of a promissory note, though no actual benefit accrues to the maker.  p. 30.

14. APPEAL.—*Review.*—*Refusal of Instructions.*—There was no error in the giving or refusal of instructions, where those given were correct and fully covered such of the requested instructions as were not erroneous.  p. 31.

15. WITNESSES.—*Impeachment.*—*Immaterial Matters.*—Where the testimony of a witness was offered to identify a contract, and thereafter the court excluded the instrument, the testimony of the witness became immaterial and it was not proper to contradict or impeach him.  p. 31.

16. EVIDENCE.—*Presumptions.*—*Failure to Produce.*—Where a party has competent evidence readily obtainable by him to prove or disprove any material fact, and fails to produce it, the presumption is that the evidence if produced would be unfavorable to his contention.  p. 32.

17. APPEAL.—*Review.*—*Misconduct of Jury.*—Alleged misconduct of the jury is not available where it does not appear that the verdict was in any way influenced thereby, or that there was even a remote possibility of its being so influenced.  p. 32.

From Porter Superior Court; *James F. Gallaher,* Judge.

Action by Samuel Abelman against Otto Haehnel, Administrator of the estate of Michael Guenther, deceased.  From a judgment for defendant, the plaintiff appeals.  *Affirmed.*

*John H. Gillett, W. J. Whinery* and *Edward Schottler,* for appellant.

*Grant Crumpacker, William Daly, George B. Sheerer, E. D. Crumpacker* and *Owen Crumpacker,* for appellee.

FELT, J.—Appellant, Samuel Abelman, filed a claim against the estate of Michael Guenther, deceased, on seven promissory notes, each dated November 2, 1907, bearing interest payable semiannually, and alleged to have been executed by the decedent to appellant.  One of said notes called for $200 with five per cent interest from date and attorneys'

fees, due in one year from date at the First National Bank of Hammond, Indiana. All of the other notes were payable at the office of the Lake County Savings and Trust Company of Hammond, Indiana, with attorneys' fees, as follows: Three, each calling for $200 with five per cent interest from date; one for $250 due in two years with five per cent interest from date; one for $300 due in two years with interest at six per cent from date, and one for $2,500 due in one year with interest at five per cent from date, and all aggregating $3,850 in principal, and accrued interest in addition thereto.

Appellee, the administrator of said estate, filed an answer in five paragraphs the first of which is a general denial. The second denies the execution of the notes. The third paragraph alleges that the notes were procured by fraud. The gist of the charge is that decedent was old, feeble in body and unsound in mind; that appellant sold a farm for him on a commission contract and was paid his commission in full; that under the pretense that the title conveyed by decedent was defective and that it was necessary for him to execute certain papers to perfect the title, appellant induced him to sign the notes in suit not knowing what they were and in the belief that they were papers relating to the title to the real estate sold by him. The fourth paragraph of answer is also an answer of fraud similar in its general averments to the third, except it charges in substance that decedent was a German, unable to read or write the English language and ignorant of the ways of doing business with banks; that he loaned appellant $200 and assigned to him a certificate of deposit for that amount; that appellant induced him to execute the notes in suit under the belief that he was only executing the necessary papers to enable appellant to obtain the $200 from the bank. The third and fourth paragraphs of answer each contained the formal and necessary averments to constitute a good answer of fraud in the procurement of the notes. The fifth paragraph alleges that

the notes in suit, and each of them, were executed without any consideration.

The appellant filed a reply in general denial to the second, third, fourth and fifth paragraphs of answer. He also filed a verified second paragraph of special reply to the third paragraph of answer in which he alleged that he did not execute the contract therein mentioned relating to the sale of the farm of decedent.

The cause was submitted to a jury which returned a general verdict for appellee, also answers to certain interrogatories. The appellant's motion for a new trial was overruled and judgment rendered on the verdict from which this appeal was taken.

The only error assigned is the overruling of appellant's motion for a new trial. A new trial was asked on the grounds that the verdict of the jury is not sustained by sufficient evidence; that it is contrary to law; that the verdict of the jury in answer to interrogatories is not sustained by sufficient evidence; that the court erred in giving, and in refusing, certain instructions; that the court erred in excluding certain evidence; that the jury was guilty of misconduct and acted through prejudice and ill will.

While there was no motion for judgment on the answers of the jury to the interrogatories, the answers become important in considering some of the questions presented, and for that reason we state their substance as follows: that decedent, Michael Guenther, on or about November 2, 1909, did not sign and deliver the notes sued on to Samuel Abelman; that seventy-five acres of real estate belonging to decedent, were conveyed to John Gavit on or about September 14, 1907, at the request of said Abelman; that the notes in suit were not given in consideration of any interest of said Abelman in the land so conveyed as aforesaid; that the notes have not been paid; that there is nothing due on said notes; that decedent did not "sign each and all of the notes sued on" and did not sign the note for $2,500; that said Abelman was

on September 14, 1907, paid in cash a commission of $375 for selling said land of decedent and the sum so paid was in full of all indebtedness to said Abelman on account of the sale of said real estate; that the land was sold under an agreement that decedent should pay claimant a commission of five per cent; that the real estate was sold for $7,500 of which amount $3,500 was paid in cash and the balance was secured by a mortgage on the real estate sold; that on September 14, 1907, decedent deposited in the bank at Hammond the sum of $3,105; that the notes in suit do not represent any *bona fide* indebtedness due from decedent's estate to the claimant and were not based upon any consideration. The jury was also asked if at the time of the execution of the notes, the decedent was a person of sound mind, but they made no answer to the question. By these answers the jury found that there was no consideration whatever for the notes in suit; that decedent did not owe appellant anything and did not execute the notes.

Appellee's second paragraph of answer is a *non est factum*, and having been filed by an administrator is good without verification. §370 Burns 1914, §364 R. S. 1881. The fifth paragraph is a plea of no consideration.

A promissory note given for the purpose of making a donation or gift to the payee, if based upon no other consideration, can not be enforced by the payee, against 1. the maker or his estate. The note is only an executory obligation, a promise to give, but not an executed gift until the note is actually paid. *West* v. *Cavins* (1881), 74 Ind. 265, 274; *Johnston* v. *Griest* (1882), 85 Ind. 503; *Gammon Theological Seminary* v. *Robbins* (1891), 128 Ind. 85, 92, 27 N. E. 341, 12 L. R. A. 506; *McCullough* v. *Martin* (1894), 12 Ind. App. 165, 168, 39 N. E. 905; *Roney* v. *Dunleary* (1906), 39 Ind. App. 108, 111, 79 N. E. 398; *Bundrant* v. *Boyce* (1911), 47 Ind. App. 253, 260, 91 N. E. 968, 92 N. E. 126; 20 Cyc. 1211; I Daniel, Negotiable Inst. (6th ed.) §180. If a note is given without any consideration it can

not be regarded as an executed gift because made payable at a bank. *Mader* v. *Cool* (1895), 14 Ind. App. 299, 302, 42 N. E. 945, 56 Am. St. 304.

In a civil case it is sufficient that the evidence supplies reasonable grounds for inferring facts essential to a recovery or a defense. Where the evidence affords such

2. reasonable grounds for inferring facts and the facts have been found by the jury, on appeal, such finding will not be disturbed for insufficiency of evidence. *Riehl* v. *Evansville Foundry Assn.* (1885), 104 Ind. 70, 74, 3 N. E. 633; *Rauh* v. *Waterman* (1902), 29 Ind. App. 344, 346, 61 N. E. 743, 63 N. E. 42; *Lake Erie, etc., R. Co.* v. *Brafford* (1896), 15 Ind. App. 655, 665, 44 N. E. 551; *Warner* v. *Marshall* (1906), 166 Ind. 88, 117, 75 N. E. 582.

Frank P. and Carrie Hufty each testified that after the death of the decedent, appellant told them that decedent liked him so well that he made him a present of the

3. notes in suit. This evidence was undisputed and sufficient to warrant the inference that the notes were executed without any consideration as alleged in the fifth paragraph of answer. By the answers to the interrogatories we know that the jury did so find. There is some evidence to support the finding and for the purposes of this appeal such finding of the jury is conclusive upon the issue presented by the answer of no consideration.

There were three witnesses who testified that in their opinions the signatures to the notes were in the handwriting of the decedent, but they did not testify on the question of delivery. There were two witnesses, girls by the name of Krieger, who testified to seeing certain notes signed by the decedent at his home in the fall of 1907, and delivered to appellant. The notes identified by these witnesses bear date of November 2, 1907. The evidence shows that appellant on that date gave to the decedent his note for $200 for borrowed money, and that this transaction occurred at the home of decedent. A daughter and grandson of decedent

testified that they were present when appellant gave the note for $200 to decedent and that the Krieger girls who claimed to have seen the notes sued upon executed, were not present. Benjamin Lohse, the grandson, testified that he wrote the note given by appellant to his grandfather, in his grandfather's house on the afternoon of November 2, 1907, and that no one was there that day but his grandfather, grandmother, his mother, Mr. Abelman and himself. The evidence of several witnesses also tends to show that after the alleged execution of the notes in suit, Michael Guenther stated that he was not indebted to any one.

George B. Sheerer, an attorney, testified that he collected a semiannual installment of interest on the note from Abelman in April, 1908; that the interest on the notes in suit is payable semiannually and would become due at the same time as the interest on the note given by appellant to decedent as aforesaid; that he talked with Abelman several times about the note and he did not say anything about holding notes against the decedent, but did claim his note was not due for two years from date instead of one year as written, and that the interest was not due semiannually. Sheerer also testified that appellant told him that he charged five per cent commission for selling the decedent's real estate; that he sold the land for $7,500 and was paid his commission of $375. The testimony of several witnesses tends to show that appellant stated many times that he sold the real estate for a commission of five per cent and received his pay in full.

The evidence also tends to show that no one interested in the estate of the decedent, had any knowledge of the notes in suit until after the death of decedent; that after his death, in a conversation with George B. Sheerer, appellant said he had an agreement with Mr. Guenther to pay him $50 an acre for his land, and that the notes in suit were given to him in payment of the amount due him for the price obtained above $50 per acre, but that he said nothing about

these notes on another occasion when he asked him to pay the note for $200 given by him to the decedent.

Otto Haehnel, the administrator, testified and corroborated the testimony of Sheerer in many respects. He said he tried to collect the $200 note from Abelman and he did not mention the notes against decedent, though the conversation occurred after the interest on the notes in suit was due, according to the provisions of the notes; that he first learned of the notes in suit some weeks after Mr. Guenther's death; that Abelman called on him and wanted to collect the notes and offered him $750 if he would allow and pay them and said he could keep $500 and give his lawyer $250. The evidence also tends to show a similar proposition made to Frank P. Hufty who had married a granddaughter of decedent, the daughter of Mrs. Lohse.

Considering the dates of the notes, the date of the sale of the land, the testimony of Mrs. Lohse and Benjamin Lohse as to the persons present at decedent's house on November 2, 1907, and all the circumstances shown by the evidence, the jury may have disbelieved the testimony of Mollie and Lena Krieger as to the signing and delivery of the notes in suit, and may have concluded that the notes were never obtained from the decedent with his knowledge or by his consent. We are to consider the evidence, if any, tending to support the verdict of the jury and all reasonable inferences the jury may have drawn therefrom. The finding of the jury is to the effect that the presumption of delivery, raised by the possession of the notes, is overcome by the evidence and that the notes were not executed. There is evidence from which the jury may have so found and in such instance, this court will not reverse for insufficiency of the evidence to support the verdict.

4. The answers to the interrogatories to the effect that decedent did not on or about "Nov. 2, 1909", sign and deliver the notes sued on to Samuel Abelman, when considered in connection with all the interrogatories

and the case as shown by the record, indicates that the date was intended for November 2, 1907, and that the "1909" is probably a clerical error. Therefore, the jury has found, both by the general verdict and by the answers to the interrogatories, that the notes were not executed by the decedent. Considering the evidence, and the inferences the jury may rightfully have drawn therefrom, we can not say as a matter of law, that there is no evidence to support the finding.

An administrator by filing special pleas, not required by the statute, limits his defenses to those pleaded. *McClosky* v. *Davis* (1893), 8 Ind. App. 190, 192, 35 N. E. 187; *Niblack* v. *Goodman* (1879), 67 Ind. 174, 200. But the filing of a plea of *non est factum* did not shift the burden of proof from appellant to appellee as to the execution of the notes in suit.

Appellant contends that the execution of the notes is clearly proven and that there is no evidence to the contrary, or at least, not more than a scintilla of evidence tending to disprove the execution of the notes, and that such proof is insufficient to require the submission of the question to the jury, and it should be disposed of on the theory that the evidence is all one way. But conceding the contention to be correct as to a mere scintilla of evidence, we find the evidence tending to disprove the execution of the notes to amount to more than a mere scintilla, or suggestion, of evidence, and to warrant the inference that the notes were not executed by appellee's decedent. There is no suggestion from any witness that the notes in suit, if signed by decedent, were signed on any other date than that of November 2, 1907, nor that appellant was at decedent's house more than once on that day. While the Krieger girls who were then about twelve and fourteen years of age respectively, at the trial five years later, testified to seeing the notes signed and delivered, they indicate that this was the only single transaction of the kind within their

knowledge. They testified that appellant lived at their home at the time and they accompanied him for the pleasure of the ride and were not very specific in the identification of the notes except one which the younger girl claimed to have written at the request of the decedent. The jury, without doing violence to the evidence, may have concluded that appellant was only at decedent's house once on November 2, 1907, and that the notes were in some way procured without the knowledge or consent of the decedent and that the Krieger girls were either mistaken or had testified falsely on the subject of the execution of the notes.

A new trial was also asked on the ground that the answers to certain interrogatories are not sustained by sufficient evidence. No motion was made for judgment on the answers of the jury to the interrogatories and the answers are in harmony with the general verdict. The assignment that the answers to certain interrogatories are not sustained by sufficient evidence presents no question for decision, but the insufficiency of the evidence is presented by the assignment that the verdict of the jury is not sustained by sufficient evidence. *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642, 656, 50 N. E. 877, 52 N. E. 399; *Staser* v. *Hogan* (1889), 120 Ind. 207, 227, 21 N. E. 911, 22 N. E. 990; *Ohio, etc., R. Co.* v. *Selby* (1874), 47 Ind. 471, 497, 17 Am. Rep. 719; *Board, etc.* v. *O'Conner* (1894), 137 Ind. 622, 648, 35 N. E. 1006, 37 N. E. 16; *Grand Rapids, etc., R. Co.* v. *Diether* (1894), 10 Ind. App. 206, 212, 37 N. E. 39, 1069, 53 Am. St. 385; *Jenney Electric Mfg. Co.* v. *Flannery* (1913), 53 Ind. App. 397, 98 N. E. 424; *Pittsburgh, etc., R. Co.* v. *Ives* (1895), 12 Ind. App. 602, 604, 40 N. E. 923. In *Ohio, etc., R. Co.* v. *Selby, supra*, 498, the Supreme Court by Buskirk, C. J., said: "If the general and special verdicts are consistent with each other, then both should stand. If they are inconsistent, and the special verdict is not supported by the evidence, the appellee, and not the appellant, had the right to complain. Suppose we

should find that the special findings were not supported by the evidence, how would that aid the appellant?    *    *    *- The general verdict includes all that is in the special findings, and more.'' In *Chicago, etc., R. Co.* v. *Kennington* (1890), 123 Ind. 409, 24 N. E. 137, the court by Mitchell, J., said: ''The rule upon which this court proceeds, is, that if the general verdict is supported by the evidence a motion for a new trial will be overruled, which assigns as a reason that it is not so supported, without regard to the manner in which interrogatories may be answered.'' In *Staser* v. *Hogan, supra,* 227 it is said: ''A number of interrogatories was submitted to the jury by the appellants and answered. It is not claimed that the answers to these interrogatories are in conflict with the general verdict, but it is contended by the appellants that the answers to the interrogatories are not supported by the evidence. It is contended that such an open disregard of the evidence, in particular and material things, as is exhibited in this case, inexorably undermines the general verdict, and requires that it should be set aside as an unsupported verdict. The object sought to be attained in putting interrogatories to the jury is to elicit from them special answers to questions of fact involved in the case, necessary to a correct application of the law to the facts in the case under investigation. For this reason, if the jury return answers to special interrogatories which disclose facts inconsistent with the general verdict, such answers will control the general verdict, and the court will render judgment according to the special facts found, notwithstanding such general verdict. If the jury should return a general verdict for one of the parties, and should answer interrogatories disclosing facts inconsistent with the verdict, it would then be necessary to inquire whether such answers were, or were not, supported by the evidence. If it found that they were not supported by the evidence, as the court could not ignore such answers, it would undoubtedly be its duty to grant a new trial, as the ends of justice

could be reached in no other way. *Murray* v. *Phillips* [1887], 59 Ind. 56; *Ohio, etc., R. Co.* v. *Selby* [1874], 47 Ind. 471. But we have no such case here. The answers to special interrogatories are consistent with the general verdict of the jury. The motion is for a new trial, assigning as a reason that the verdict of the jury is not supported by the evidence. In such case the attention of the court is not called to the interrogatories and the answers thereto, but it is directed to the evidence in the cause. It is the duty of the court to examine the evidence, and if it supports the general verdict, the motion should be overruled, without any regard to the manner in which the answers to interrogatories are made.''

As already indicated there is evidence in this case tending to prove that the notes in suit were not executed and that there was no consideration supporting them. The same evidence also supports the answers to the interrogatories in harmony with the general verdict.

Appellant contends that the question of the unsoundness of the mind of the decedent was not within the issues, but both appellant and appellee agree that the answers 10. of the jury to the interrogatories show that the verdict of the jury is not based on the unsoundness of the mind of the decedent. Appellant in his brief says: ''The jury did not find or intend to find that the decedent, Guenther, was a person of unsound mind. This is evidenced by the fact that they did not answer interrogatory No. 14. * * * This is the only interrogatory submitted calling for an answer by the jury regarding the condition of mind of the decedent, Guenther. The jury's failure to answer interrogatory No. 14 shows that they did not find that decedent Guenther was of unsound mind, but based their verdict upon something else.'' Appellee quotes the foregoing from appellant's brief and expressly states that he agrees with the statement, both as to the facts stated and the inference drawn therefrom, namely, ''that the jury did not

find or intend to find that the decedent Guenther was a person of unsound mind.'' This being true, for the purposes of this appeal, it is apparent that any alleged errors in the instructions relating to unsoundness of mind were harmless. The only instruction requested by appellant on the subject of mental unsoundness was peremptory and directed a verdict for appellant on that issue. In our view of the case the court did not err in refusing the instruction.

Appellant complains especially of the giving of instruction No. 4 on the subject of fraud in the procurement of the notes in suit. It is claimed that the instruction is incomplete, that it gave an erroneous definition of fraud, and that it was outside the issues because no evidence was offered tending to support the issue of fraud. Objection is also made to instruction No. 5 given on the same subject. Appellant claims there is no evidence tending to support the third and fourth paragraphs of answer. Appellee admits there is no direct proof of fraud as alleged, but insists that the jury had the right to infer fraud from the facts and circumstances shown by the evidence. In view of the finding in favor of appellee on the second and fifth paragraphs of answer, we do not consider it necessary to discuss at length the questions relating to the issue of fraud. Where the record affirmatively shows that the jury found for the defendant upon certain issues presented by paragraphs of answer, and that such finding necessarily resulted in a verdict for the defendant, an error, relating to an issue presented by another paragraph of answer wholly different from the one upon which it affirmatively appears the jury so found, is harmless, because it could not have changed the verdict. As applied to this case, the answers of the jury to the interrogatories make the record affirmatively show that the jury found for appellee both on the issue of *non est factum* and of no consideration. *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313; *Kelley* v. *Bell* (1909), 172 Ind. 590, 595, 88 N. E.

58; *Gregory* v. *Arms* (1911), 48 Ind. App. 562, 578, 96 N. E. 196; *United States Cement Co.* v. *Cooper* (1909), 172 Ind. 599, 605, 88 N. E. 69; *McComas* v. *Haas* (1884), 93 Ind. 276; *Reddick* v. *Young* (1912), 177 Ind. 632, 98 N. E. 813; *Indiana Fuel Supply Co.* v. *Indianapolis Basket Co.* (1908), 41 Ind. App. 658, 84 N. E. 776. But it is claimed by appellant that the answers of the jury to interrogatories to the effect that decedent did not sign and deliver the notes in suit to appellant, may have been influenced by the error in instruction No. 4; that the instruction indicated to the jury that though the notes were actually executed by decedent, they might find that they were not executed, if they believed that when he was executing them he acted without a knowledge of what he was doing, "or was so deceived that he thought that he was doing some other act or executing some other paper." It may be conceded that the instructions on the subject of fraud are erroneous, but it does not necessarily follow that appellant was harmed thereby. Conceding, without deciding, that they may have had some effect in determining the answers relating to the question of the execution of the notes they could not have influenced or in any way affected, or produced the answers which find that the notes were executed without any consideration. The answers are clear and definite on this point, and as already shown there is evidence tending to prove that there was no consideration whatever supporting any of the notes in suit. If there was no consideration for the notes, they were not enforcible by appellant against the decedent's estate, though they may have been duly executed. It therefore affirmatively appears from the record that the jury based its finding on the plea of no consideration. If this plea was sustained it compelled a verdict for appellee, and errors relating to the execution of the notes, or the question of fraud were harmless, because the result must have been the same independent of those issues or any errors relating thereto.

Complaint is also made of the giving of instruction No.

on the subject of consideration, as indicating that there could be no consideration unless the plaintiff gave the decedent something for the notes; that with this idea before the jury, it was told that if there was no consideration for the notes the plaintiff must fail. It is insisted that this definition is too narrow. That as a matter of law there might be a good consideration for the notes without appellant actually giving the decedent anything. It is true as a general proposition that there may be sufficient consideration to support a contract without the payee or obligee actually giving anything of value to the obligor. It will be sufficient if there be any damage, inconvenience or detriment to the promisee, though no actual benefit accrue to the party undertaking to perform the obligation. Chitty says: ''Unless it appear that the promisee incurred no detriment whatever, it need not be shown, in order to constitute a good consideration, that a benefit resulted to the promissor, from the performance by the promisee of the stipulated act.'' 1 Chitty, Contracts (11 Am. ed.) 31; *Shade* v. *Creviston* (1884), 93 Ind. 591, 595; *Mullen* v. *Hawkins* (1895), 141 Ind. 363, 366, 40 N. E. 797; *Wolford* v. *Powers* (1882), 85 Ind. 294, 44 Am. Rep. 16; *Druckamiller* v. *Coy* (1908), 42 Ind. App. 500, 505, 85 N. E. 1028. In this case it appears from the answers of the jury to the interrogatories that there is nothing due on the notes; that appellant had been paid all that the decedent owed him; that the notes were not given for any interest in the land sold to Gavit and do not represent any *bona fide* indebtedness due from decedent's estate to appellant. Furthermore, a careful reading of the evidence as set out in appellant's briefs excludes the idea that the notes were given for any inconvenience, damage or detriment to appellant and shows that the consideration was either something of value passing from appellant to decedent, growing out of said real estate transaction, or that there was no consideration whatever for the notes. As already shown, the

jury found that there was no consideration whatever for the execution of the notes. Though the instruction as a general proposition gives too narrow a definition of a good consideration, as applied to the facts of this case, it was not misleading or harmful to appellant because of its inaccuracy or incompleteness. There was no evidence in the case which called for the application of the phase of consideration omitted from the instruction. The jury was instructed that the notes import a consideration sufficient in the absence of evidence, and that to defeat them the burden of proof was on defendant to prove that there was no consideration whatever for their execution; that inadequacy of consideration would not defeat a recovery on the notes.

The other questions suggested, relating to the instructions, do not require detailed consideration. The instructions given fairly and accurately stated the law applicable to the issues, and the errors suggested were not prejudicial to appellant. Some of the instructions tendered by appellant, as applied to the evidence, were erroneous, and those which were correct and applicable to the issues were covered by those given by the court. There was therefore no harmful error in the giving or refusal of instructions.

Complaint is also made of the exclusion of certain evidence offered by appellant in rebuttal of testimony given by one George B. Sheerer and as tending to impeach the witness Sheerer. The evidence of Sheerer was offered to identify the alleged contract between appellant and the decedent for the sale of the land with a view of offering it in evidence, and referred to some alleged admissions of appellant relating thereto, made at a former trial of the case. The court sustained an objection and excluded the instrument. The main issue was therefore determined in appellant's favor. Sheerer's testimony by such ruling became immaterial and it was not proper to contradict his testimony on that subject or to attempt to

impeach him on an immaterial matter. Furthermore, there was evidence, of other witnesses, tending to show that after the death of decedent, appellant admitted that he sold the land of decedent on a contract for a five per cent commission and that his commission was paid in full. Appellant was a competent witness to deny these statements and to give to the jury his version of such conversations. Sheerer's testimony, at most, only tended to show the existence of a written contract relating to the sale of the land. Though the alleged writing was excluded, the jury was warranted in finding from other testimony that the land was sold on some kind of a commission contract and the testimony authorizing such finding was not denied by appellant.

16. Where a party has competent evidence, presumably favorable to him, readily obtainable by him to prove or disprove any material fact, and fails to produce it, the presumption is that the evidence if produced would be unfavorable to his contention. *Indiana Union Traction Co.* v. *Scribner* (1910), 47 Ind. App. 621, 637, 93 N. E. 1014. In any view of the situation, we are unable to see that appellant was harmed by the exclusion of the offered evidence.

The alleged misconduct of the jury assigned as ground for a new trial, as presented, is not tenable. It is not made to appear that the verdict was in any way influenced

17. by the conduct of which complaint is made, or that there was even a remote possibility of its having been so influenced to appellant's harm. On the whole record, the case seems to have been fairly tried, and substantial justice seems to have been done between the parties. We find no harmful error in the record, and the judgment is therefore affirmed.

Lairy, C. J., Ibach, Caldwell, Hottel and Shea, JJ., concur.

NOTE.—Reported in 103 N. E. 869. As to the impeaching of witnesses, see 14 Am. St. 157. For a discussion of a donor's own note as the subject of a gift *inter vivos*, see Ann. Cas. 1914 C 884. See, also, under (1) 7 Cyc. 728; (2, 3) 3 Cyc. 348; (4) 3 Cyc. 348, 8 Cyc. 219; (5) 38 Cyc. 1930; (6) 31 Cyc. 693; (7) 8 Cyc. 216; (8)

3 Cyc. 345; (9) 29 Cyc. 836; (10) 38 Cyc. 1815; (11) 38 Cyc. 1811; (12) 38 Cyc. 1815; (13) 7 Cyc. 1915 Ann. 693–New; 9 Cyc. 340; (14) 38 Cyc. 1704; (15) 40 Cyc. 2769; (16) 16 Cyc. 1059; (17) 38 Cyc. 1822.